Israel VASQUEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–89–00668–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 6, 1990.

Discretionary Review Granted
Dec. 19, 1990.

**556**

Kenneth P. Mingledorff, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., and Carol Cameron and Joe King, Asst. Dist. Attys., for appellee.

Before BASS, COHEN and MIRABAL, JJ.

OPINION

MIRABAL, Justice.

A jury found appellant, Israel Vasquez, guilty of possession of a firearm by a felon. After finding two enhancement paragraphs true, the jury assessed punishment at 99 years confinement.

Houston Police Officer R. Sepolio testified that on July 11, 1988, at approximately 3:45 p.m., he was at a business, gathering information on an unrelated case. An unidentified man approached Officer Sepolio and told Sepolio that a man with a gun was in the parking lot of a nearby Stop–N–Go. After obtaining the suspect's description from the witness, Sepolio drove to the Stop–N–Go and observed appellant, who fit the description, walking down the road. Officer Sepolio, who was in uniform, exited his patrol car and ordered appellant to get on the ground. Appellant turned, looked at Sepolio, and reached for his waistband under his shirt. In response, Sepolio pointed his pistol at appellant and said "Don't do it. Get on the ground." Appellant failed to comply at first, but then removed his hands from under his shirt, held his hands out to his side, and got on the ground. Sepolio searched appellant and recovered a revolver from the waistband of appellant's pants. The pistol was loaded with six live rounds. Officer Sepolio arrested appellant and placed appellant in his patrol car. Upon arrest, appellant falsely identified himself as Robert Garcia. The police determined appellant's true identity after fingerprinting him.

Deputy McDonald of the Harris County Sheriff's Department Identification Division testified that he compared the fingerprints in State's Exhibit 3, a Texas Department of Corrections penitentiary packet, with appellant's fingerprints, and concluded that the prints were made by the same person. The trial court admitted a copy of the penitentiary packet into evidence; the pen packet shows that appellant had been found guilty of the felony offense of attempted capital murder.

Appellant admitted at trial that he previously had been convicted of attempted burglary, burglary, possession of marijuana,

attempted capital murder, and burglary of a habitation.

In his first point of error, appellant contends the evidence was insufficient to show appellant previously had been convicted of a felony offense involving an act of violence or threatened violence.

In reviewing the sufficiency of the evidence to support a conviction based upon direct evidence, the evidence is viewed in the light most favorable to the judgment. *Flournoy v. State,* 668 S.W.2d 380, 383 (Tex.Crim.App.1984). The critical inquiry is whether, after viewing the evidence in the light most favorable to the judgment, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App. 1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988).

Appellant was convicted pursuant to TEX. PENAL CODE ANN. § 46.05 (Vernon 1989), which provides:

A person who has been convicted of a felony involving an act of violence or threatened violence to a person or property commits an offense if he possesses a firearm away from the premises where he lives.

Appellant argues the evidence is insufficient to establish that appellant's prior felony conviction for attempted capital murder involved an act of violence or threatened violence.

■ When the previous crime is one that, as a matter of law, always involves an act of violence, it is sufficient for the State to prove that the defendant intentionally possessed a firearm outside of his home, and that the defendant previously was convicted for the crime of violence. However, when the underlying crime is not inherently violent, the trier of fact must determine whether the previous crime was violent from the facts and circumstances of the previous crime. *Ware v. State,* 749 S.W.2d 852, 855 (Tex.Crim.App.1988).

Appellant argues that attempted capital murder is not a crime of violence per se, and thus the State failed to meet its burden of proof by failing to present evidence of the circumstances surrounding appellant's prior conviction to show its violent nature. Appellant bases this argument on the fact that one of the ways a person can commit attempted capital murder is by hiring another person to commit the murder. Appellant argues that the act of hiring a murderer is not itself a violent act.

A person commits the offense of *murder* if that person "intentionally or knowingly causes the death of an individual." TEX.PENAL CODE ANN. § 19.02(a)(1) (Vernon 1989). One way a person commits *capital murder* is by committing murder as defined in § 19.02(a)(1), and "employ[ing] another to commit the murder for remuneration or the promise of remuneration." TEX.PENAL CODE ANN. § 19.03(a)(3) (Vernon 1989). A person commits an *attempt* offense "if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." TEX.PENAL CODE ANN. § 15.01(a) (Vernon Supp.1990).

Violence inheres not in the result, but in the intent and act. *Hamilton v. State,* 676 S.W.2d 120, 121 (Tex.Crim.App.1984). For example, arson requires an act of setting fire with the intent to destroy or damage, and therefore arson is a crime of violence per se, regardless of the amount of damage caused. *Id.*

The legislature has provided that a person who intentionally or knowingly causes the death of an individual by employing another to commit the murder for remuneration or the promise of remuneration is just as guilty of capital murder as the person actually pulling the trigger. § 19.03(a)(3). Thus, under Texas law, the employer is just as culpable as the person employed who physically kills or attempts to kill the intended victim.

■ The phrase "an act of violence or threatened violence to a person or property" as used in § 46.05 has the meaning that would be ascribed to it by persons of ordi-

nary intelligence. *Gardner v. State*, 699 S.W.2d 831, 836 (Tex.Crim.App.1985). We find that hiring someone to kill a person is at least an act of threatened violence. We hold that attempted capital murder is, per se, "a felony involving an act of violence or threatened violence to a person."

The State proved appellant previously was convicted of attempted capital murder by admitting the pen packet into evidence. Further, appellant admitted the conviction. Because attempted capital murder is inherently a crime of violence or threatened violence, live testimony regarding the facts and circumstances of the crime was not required. *Ware*, 749 S.W.2d at 855. Thus, the evidence before the jury was sufficient for a rational trier of fact to conclude that appellant previously had been convicted of a felony offense involving an act of violence or threatened violence.

We overrule point of error one.

■ In his second point of error, appellant contends there is a fatal variance between the State's allegations and proof as to an essential element of the offense.

Appellant argues that the indictment alleged one prior offense, and the State offered proof of another, for the § 46.05 requirement of a prior felony offense involving violence. The indictment alleged appellant was previously convicted of *attempted murder*, whereas the State proved appellant was previously convicted of *attempted capital murder.*

"Murder" is one of the elements of "capital murder." § 19.03(a). The State's proof showed not only that appellant previously was convicted of attempted murder, but that appellant was also guilty of some aggravating element that increased the offense to the higher crime of attempted capital murder. For a variance between the pleading and the proof to be fatal, the variance must be material and prejudicial to the defendant. *Human v. State*, 749 S.W.2d 832, 836 (Tex.Crim.App.1988). We find that the difference here is in no way prejudicial to appellant. Whether appellant was convicted of attempted murder or attempted capital murder, appellant was shown to be a convicted felon, the requirement of § 46.05.

We overrule point of error two.

In his third point of error, appellant contends his trial counsel was ineffective because he failed to research the law regarding defenses available in this case, pursued a defense that was unavailable, and did not urge the only defense raised by the evidence, namely, the defense of necessity.

The standard of review for effectiveness of counsel is gauged by the totality of the representation of the accused. *Ex parte Duffy*, 607 S.W.2d 507, 516 n. 16 (Tex.Crim. App.1980). The constitutional right to counsel does not mean errorless counsel or counsel whose competency is judged by hindsight. Rather, the right to effective assistance of counsel means counsel reasonably likely to render reasonably effective assistance of counsel. *Ex parte Cruz*, 739 S.W.2d 53, 57–58 (Tex.Crim.App.1987). An isolated failure to object to certain procedural mistakes or improper evidence does not necessarily constitute ineffective assistance of counsel. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex.Crim.App.1984). Thus, to obtain a reversal because of ineffective assistance, appellant must show that: (1) counsel's performance was so deficient that counsel was not functioning as the counsel guaranteed by the sixth amendment; and (2) there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 695, 104 S.Ct. 2052, 2064, 2068–69, 80 L.Ed.2d 674 (1984).

Appellant argues his counsel was ineffective by pursuing the unavailable defense of self-defense, and failing to urge necessity as a defense.

The Texas Penal Code provides:
Conduct is justified if:

    (1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

    (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevent-

ed by the law prescribing the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

TEX.PENAL CODE ANN. § 9.22 (Vernon 1974).

The trial court granted the State's motion to quash two applications for subpoenas filed by appellant; the subpoenas were quashed on the grounds of lack of relevancy. Appellant's trial counsel responded as follows:

> [Defense counsel]: Your Honor, I'd like to make a bill of exceptions as to defendant's subpoena request and place him on the stand and let him answer why he wanted these records, et cetera.
>
> THE COURT: Can you tell me—I'll let you tell me why he wants them.
>
> [Defense counsel]: He wants those records to show that he was in the Ben Taub Hospital a few days prior to the date in question; to establish that he had been kidnapped from the hospital by the members of Texas prison gangs, that he was never discharged from the hospital; that he never signed a discharge release form and he feels like these are relevant to his case, to the defense of this case.
>
> THE COURT: Any other reason that he wants those records?
>
> [Defense counsel]: He says that he wants the records to help him establish self-defense as to why he had the gun.
>
> THE COURT: [Defense counsel], I still find that the request for the subpoena [should be quashed] on the basis of relevancy and perhaps you need to explain to your client that self-defense is not a defense to this offense of possession of a firearm.
>
> [Defense counsel]: All right. All right, Your Honor.

Later in the trial, the trial court sustained the State's objection to testimony appellant sought to elicit regarding appellant's alleged kidnapping. The following then transpired:

> THE COURT: [Defense counsel], if everything that your client says is true, that he was the victim of some kind of gang warfare and somebody was after him or kidnapped him or whatever, is that a defense to him carrying a firearm, a handgun?
>
> [Defense counsel]: I feel—I and the defendant feel that it is a defense.
>
> THE COURT: Do you have any case law? I don't believe I've read the statutes, so I don't believe there's any in the statutes that says there's any defense to a felon carrying a handgun. Can you give me case law on this point?
>
> [Defense counsel]: The defendant indicates to me that his reading of Corpus Juris 40, Section 29.130 and 136 allows him to make a defense to a felon carrying a weapon of self-defense, or that brings out the issue of self-defense.
>
> THE COURT: I am going to find that this witness' testimony is not relevant to this case and I am going to not allow him to testify.

Defense counsel then made a bill of exceptions.

Appellant points out that the defense of necessity is available in a prosecution for unlawfully carrying a weapon under TEX. PENAL CODE ANN. § 46.02 (Vernon 1989), but self-defense is not, citing *Johnson v. State*, 650 S.W.2d 414, 416 (Tex.Crim.App. 1983), and *Armstrong v. State*, 653 S.W.2d 810 (Tex.Crim.App.1983) (§ 46.02 conviction reversed for trial court's denial of requested charge on necessity. Defendant's testimony alone was sufficient to raise necessity defense).

The jury charge in the present case did not include either defense, necessity or self-defense, and trial counsel did not object to the charge or request instructions on either defense.

■ The State argues that, even if the defense of necessity is available under § 46.05, appellant cannot avail himself of the defense because appellant did not admit to committing the crime. A defendant is not entitled to the defense of necessity unless the defendant admits committing the crime. *See Pentycuff v. State*, 680 S.W.2d 527, 528 (Tex.App.—Waco 1984, pet. ref'd) (defendant not entitled to necessity defense where defendant did not admit

to driving while intoxicated); *Klein v. State*, 662 S.W.2d 166, 170 (Tex.App.—Corpus Christi 1983, no pet.) (defendant not entitled to necessity defense where defendant did not admit to intentionally or knowingly committing aggravated assault).

The indictment charged that appellant did

> intentionally and knowingly possess away from the premises where he lived at the time a firearm, namely A HANDGUN, and prior to the possession the Defendant had been convicted of a felony involving an act of violence and threatened violence, namely, ATTEMPTED MURDER, in the 176th District Court of Harris County, Texas, in Cause No. 269167.

Appellant testified at the guilt/innocence stage of trial that he had been a building superintendent at the Texas Department of Corrections, and thus prison gang members were trying to kill him. Appellant said he was kidnapped from Ben Taub Hospital where he was recovering from injuries inflicted by gang members, that he was taken to the Kirkwood motel where he was kept drugged and held against his will under armed guard of two or three people until he escaped two days later. Appellant testified that while his guard was distracted by a warning that narcotics officers were outside, he picked up a nickel plated Luger .357 magnum, pointed it at the kidnapper and escaped. Appellant testified that State's Exhibit 2, which had been earlier identified as the gun he was carrying when arrested, is not the same gun he picked up and had with him when he was arrested. Appellant said after his arrest, from the back seat of the patrol car, appellant saw a narcotics raid executed at the Kirkwood motel. During the 20 minutes appellant was in the parking lot of the Kirkwood motel, appellant identified to the arresting officer the man who had been holding appellant.

Although appellant denied at trial that State's Exhibit 2 is the gun he picked up, appellant does admit to holding a gun. Appellant also admitted his previous felony conviction for attempted capital murder.

Thus, appellant admitted committing the crime.

Part of appellant's story was corroborated by appellant's arresting officer, R. Sepolio. Officer Sepolio testified that he saw appellant walking down the street, occasionally looking over his shoulder back at the Stop–N–Go. After appellant was arrested and placed in the police car, appellant asked Officer Sepolio for help, claiming that two men with guns were at the Stop–N–Go, and if appellant returned, they would shoot him. Appellant told Officer Sepolio that he had been held in unit 5 of the Kirkwood motel. Officer Sepolio said he took appellant to the motel parking lot for three to four minutes until a narcotics raid was completed on unit 5 of the Kirkwood motel, which is about 50 feet from the Stop–N–Go.

■ No Texas court has held that necessity is a defense to an offense under § 46.05. However, the defense of necessity is available in a prosecution under § 46.02, *Armstrong*, 653 S.W.2d at 810, and the § 46.02 offense of unlawfully carrying a handgun is a lesser included offense of the § 46.05 offense of possession of a firearm by a felon. *Hazel v. State*, 534 S.W.2d 698, 701 (Tex.Crim.App. 1976). Therefore, we hold that necessity may be a defense to prosecution under § 46.05, under appropriate facts.

■ Appellant argues that since the Court of Criminal Appeals, in 1983, held that the necessity defense was available in connection with § 46.02 offenses, trial counsel should have urged the necessity defense for this § 46.05 offense.

We find that, although trial counsel did not specifically use the words "necessity defense," he made it clear to the trial court that he believed a defense was available based on the circumstances surrounding appellant's alleged kidnapping and his escape. The necessity defense here was closely aligned with a theory of self-defense. The trial court was not aware of the availability of necessity as a defense, and the prosecutor consistently objected to evidence about the alleged kidnapping on

irrelevancy grounds, indicating the prosecutor was also unaware of the possible applicability of necessity as a defense.

In the absence of case law at the time of trial holding that necessity is a defense to an offense under § 46.05, and in view of the totality of the representation of appellant, which included effective cross-examination, appropriate objections, and numerous bills of exceptions, we find that appellant was afforded reasonably effective assistance of counsel.

We overrule point of error three.

In his fourth point of error, appellant contends the trial court erred in refusing appellant's requested instruction on the lesser included offense of carrying a handgun.

█ If charging error was properly preserved at trial, any harm, regardless of the degree, is sufficient to require a reversal of the conviction. *Gibson v. State*, 726 S.W.2d 129, 133 (Tex.Crim.App.1987) (op. on reh'g). Appellant objected to the failure of the court's charge to include the lesser included offense of carrying a handgun, thereby preserving error.

If the evidence from any source raises the issue of a lesser included offense, it must be included in the court's charge. It is not the court's function to determine the credibility or weight to be given the evidence raising the lesser included offense. The fact that the evidence raising the issue may conflict or contradict other evidence in the case is not relevant to the determination. Rather, it is the jury's duty, under proper instruction, to determine whether the evidence is credible and supports the lesser included offense or defensive theory. *Gibson*, 726 S.W.2d at 132–33. To determine whether a charge on a lesser included offense is required, the lesser included offense must be included within the proof necessary to establish the offense charged. However, this does not itself warrant a jury charge on the lesser offense. There must be some evidence in the record that if the defendant is guilty, he is guilty only of the lesser offense. *Creel v. State*, 754 S.W.2d 205, 210 (Tex.Crim.App.1988).

█ Appellant first argues that he should have received the lesser included offense instruction because of the variance between the indictment alleging *attempted murder* and the proof of *attempted capital murder*. Appellant bases this argument on *Yeager v. State*, 737 S.W.2d 948 (Tex.App.—Fort Worth 1987, no pet.). In *Yeager*, the court reversed a conviction for possession of a firearm by a felon because of the trial court's refusal to charge on the lesser included offense of carrying a handgun. The court reversed because there was a variance in the indictment and proof, in that the pen packet relied on to prove the defendant was a felon showed the court had revoked the defendant's felony probation. The court held that this variance might lead the jury to believe the person shown in the pen packet was not the defendant, and thus would prevent the jury from convicting the defendant as a felon possessing a handgun. *Id.* at 953.

Appellant argues that the only difference in the present case is that the issue is the identity of the previous felony, rather than the identity of the previous felon. However, as discussed under point of error two, both attempted murder and attempted capital murder are felonies, so appellant was not harmed by the variance. There is no evidence showing appellant would be guilty of only the lesser included offense of carrying a hand gun.

Appellant next argues that appellant's testimony, that he forgot he was holding the gun he had used to effectuate his escape, raised the issue that he was not intentionally and knowingly possessing the handgun at the time of his arrest. Because of this testimony, appellant argues the jury should have been instructed on the lesser included offense of carrying a handgun, which includes the culpable mental state of "recklessly."

Appellant testified as follows regarding his conduct after his escape from the motel room where he was being held by kidnappers:

When I got to the road close to in front of across the street from the road like that, a Stop–N–Go on the left-hand side,

**562**

the way I was running—the way I was walking, rather, there's a motel on the side and a Stop–N–Go on the other side, right on the corner, and when I was coming down running, I had the gun out by this and I was waving—I was waving and the cars that were going by, trying to stop somebody so they could help me and—but nobody would stop and then I snapped, well, no wonder nobody wants to stop. I got a gun. So I put it in my waist, put it down there and started walking again, and then I just heard a car stop by and say hold it or something.

. . . .

At that moment it wouldn't register who was in the car ... I just turned around and I just looked and looked and looked, and finally I distinguished that it was a police officer.

The above testimony shows that, although appellant may have forgotten for a moment he had a gun in his hand, before his arrest appellant again realized he was holding a gun and put it into the waist of his pants. This is no evidence that appellant did not intentionally and knowingly possess the gun at the time of his arrest, and thus appellant's testimony did not warrant a lesser included offense instruction.

We overrule point of error four.

We affirm the judgment.

COHEN, Justice, dissenting.

I would hold that the trial counsel was ineffective for failing to request a jury instruction on necessity. Given appellant's admission that he carried a gun and his criminal record, conviction was a foregone conclusion without that instruction. There was some evidence of necessity here, although much of it was ruled inadmissible. The arresting officer partly corroborated appellant's testimony about necessity. The hospital records would have supported the defense, according to the bill of exceptions, which we must accept as true. Thus, the evidence of necessity was not patently incredible and might have been believed. Even if jurors believed it, however, they still had to convict because the charge was silent concerning the defense.

If the evidence raised the necessity defense, I would reverse because counsel failed to request an instruction. If the trial court erroneously excluded evidence necessary to raise the necessity defense, I would reverse for that reason. Although we have no point of error alleging that particular complaint, I would hold, under these unusual facts, that that error is so closely connected to the point of error on ineffective assistance of counsel that it justifies relief.

I respectfully dissent.