**Raymond Howard MARLOW, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–90–01079–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 11, 1994.

Publication Ordered Sept. 15, 1994.

Thomas D. Moran, Houston, for appellant.

John B. Holmes, Carol Cameron, Marylou Keel, Harris, for appellees.

Before OLIVER–PARROTT, C.J., and HEDGES and ANDELL, JJ.

## OPINION

HEDGES, Justice.

A jury found appellant, Raymond Howard Marlow, guilty of murder. The trial court assessed punishment at 45–years confinement. On a previous appeal of this conviction, appellant's counsel filed an *Anders* [1] brief, asserting that the appeal was wholly frivolous and without merit. Appellant then filed an untimely pro se brief, raising two points of error, and we affirmed. The Court of Criminal Appeals vacated this court's judgment and remanded for further proceedings. On remand, we overruled appellant's first point of error, sustained appellant's second point of error, and reversed and remanded for new trial. We then granted the State's motion for rehearing, withdrew our earlier opinion in which we had reversed and remanded, and we ordered appellant to rebrief his case and raise any issues he desired. In four points of error, appellant claims he received ineffective assistance of counsel, and he asserts the trial court committed fundamental error in failing to charge the jury sua sponte on defense of property or on self-defense as it relates to the prevention of robbery or aggravated robbery. We affirm.

### Facts

Appellant was disabled and received supplemental security income (SSI). He and complainant, Harold Ashlock, had known each other for over four years. Appellant and complainant had a history of getting drunk together and fighting. On March 31, 1990, appellant cashed his SSI check at a grocery store and purchased two bags of groceries and five and a half gallons of wine. Appellant's purchase also included a folding knife, which became the murder weapon a few hours later. Appellant and complainant

---

**1.** *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

then took a taxi to a motel, paid for a room, and began drinking. Appellant testified that he saw complaint taking his money, and, when he tried to stop him, complainant "went to hit me." At that point, appellant stabbed complainant in the chest with the knife "to get him off me."

Complainant lay on the bed awhile and then got up and wandered to the open doorway, where he told two nearby residents of the motel that he needed an ambulance. Officer Jeffrey Shipley of the Houston police department responded to the stabbing call and found complainant lying on his back, still alive, in front of the motel room door. Complainant told Officer Harold Childers, also of the Houston police department, that appellant had stabbed him. Complainant was transported to Ben Taub Hospital, where he died later that day from the stab wound.

### Ineffective Assistance of Counsel

■ In his first and second points of error, appellant asserts that he received ineffective assistance of counsel under the constitutions of the United States and of Texas. He bases this claim primarily on counsel's failure to request instructions on defense of property and self-defense as it relates to preventing robbery or aggravated robbery. Appellant contends that the evidence at trial raised neither voluntary manslaughter nor self-defense as defined in the jury charge. He further contends that his own testimony raised defense of property, under TEX.PENAL CODE ANN. § 9.42 (Vernon 1974), and self-defense as it relates to preventing robbery or aggravated robbery, under TEX.PENAL CODE ANN. § 9.32(3)(B) (Vernon Supp.1994). Appellant argues that, because these issues were raised by the evidence, and because the evidence did not support any other defensive theory, defense counsel should have requested these instructions in the jury charge. Appellant claims that counsel's failure to do so constituted ineffective assistance. We disagree.

■ The proper standard for attorney performance is reasonably effective assistance. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Ingham v. State,* 679 S.W.2d 503, 509

(Tex.Crim.App.1984). "There are countless ways to provide effective assistance in any given case." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2064. Trial counsel must have wide latitude in making strategic and tactical decisions. Otherwise, counsel would lose its constitutionally protected independence. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. To "eliminate the distorting effects of hindsight," this Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2064; *Ingham,* 679 S.W.2d at 509.

■ In *Strickland,* the Supreme Court set forth a two-step test for evaluating ineffectiveness claims:

> First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687, 104 S.Ct. at 2064. Appellant has the burden of proving ineffective assistance of counsel and must meet this two-step test by a preponderance of the evidence. *Davis v. State,* 830 S.W.2d 762, 765 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd).

#### A. Jury Instructions

■ Appellant's primary basis for his claim of ineffective assistance is counsel's failure to request instructions raised by the evidence. The charge included the following instruction on self-defense:

> Upon the law of self-defense, you are instructed that a person is justified in using force against another when and to the degree he reasonably believes the force is

immediately necessary to protect himself against the other person's use or attempted use of unlawful force. The use of force against another is not justified in response to verbal provocation alone.

A person is justified in using *deadly force* against another if he would be justified in using force against the other in the first place, as above set out, and when he reasonably believes that such deadly force is *immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force, and if a reasonable person in the defendant's situation would not have retreated.*

(Emphasis added.)

The question here is whether the following testimony raises the issue of self-defense as defined in the jury charge:

Q. State what happened then, sir, when you saw him taking your money.

A. Okay. *I went to stop him from taking my money. He went to hit me.*

Q. All right. Then what did you do?

A. I grabbed that knife, and I stuck him.

Q. One time or two times?

A. Just once, *enough to get him off me.*

Q. Was he literally on you?

A. Almost. He was close enough where I could go like that though.

Q. What happened after you stuck him?

A. He stopped. He just sat down and all of a sudden he laid down in the bed, and that was it....

Q. When you testified earlier, sir, that he came at you—

A. Yeah.

Q. What happened exactly? Can you tell the jury the specifics, exactly what happened or how it happened?

A. All I know is he went for my money. I went to stop him, and that's when *he started hitting me.* I grabbed the knife and stuck him and *there was no place for me to go to.* I can't get up and stand up and fight him.

Q. At any time during this period of time were you afraid of the guy at all or anything?

A. *Afraid he was going to hurt me like he's done before.*

Q. Did you have any—do you feel that you had any choice to do what you did?

A. Well, *it was either do that or let him beat the hell out of me* and take my money and leave....

Q. Could you have done anything else other than what you did do at that time other than stick him?

A. No. Like I said, *I can't get up and fight him. I can't do that because I can't walk.*

(Emphasis added.)

From this testimony alone, the jury could have inferred that appellant was in fear of his life. Appellant was disabled and could not retreat from the beating that complainant had begun to inflict upon him. Hence, self-defense was a reasonable theory of defense in this case. *See* Tex.Penal Code Ann. § 9.32(1), (2), (3)(A) (Vernon Supp.1994).

The record indicates that trial counsel intentionally chose self-defense as the only defensive theory, even though other defensive theories were available. The theories of defense to be included in the jury charge generally fall within counsel's wide latitude to make strategic and tactical decisions. Appellant relies upon *Vasquez v. State,* 830 S.W.2d 948 (Tex.Crim.App.1992), for the proposition that trial counsel was ineffective by failing to request instructions on alternative defenses that were available. *Vasquez,* however, involved the omission of the *only* available defense. In the present case, appellant had several defensive theories available to him, and trial counsel chose to proceed with only one of those, namely, self-defense. This is within his prerogative as a matter of trial strategy.

The jury did not have the option of the alternative defensive theories appellant now raises, but this omission does not constitute ineffectiveness. Trial counsel may pursue one reasonable defensive theory and exclude others; this is within his constitutionally protected independence under *Strickland.*

## B. Statement to Police

In addition, appellant claims that trial counsel was ineffective in failing to object to several items of evidence, including his own statement containing vulgar and hostile language, an investigator's report that was contained in an autopsy report, and the murder weapon, which was seized from the motel room with neither a warrant nor appellant's consent. Appellant claims on appeal that trial counsel should have objected to the following written statement, which appellant signed a few hours after the stabbing:

> Harold Ashlock jump [sic] on me and I stuck him with a pocket knife. Yea I stick him again five hundred more times, that mother f———. F—— the judge too, f—— Huntsville. I will do my time, if I get out I will stick him again. It dont [sic] make a different [sic], I am going to do life.
> *I had to do what I had to do,* thats [sic] not the first time he jumped on me. *He will not jump on me again. I will kill him next time, I will make sure he's dead next time.* If he thinks I [sic] f———— lying, try me. I kill that mother f——— dead like a f——— rat, worst [sic] then [sic] a f——— rattle snake.

(Emphasis added.)

Trial counsel joined the State in offering appellant's written statement into evidence. This was part of his defensive trial strategy, evident from his own opening statement, when he told the jury, "[Y]ou have to get the intent from that statement." Appellant has failed to show how trial counsel was deficient in using this written statement to show intent.[2]

## C. Investigator's Report

Appellant contends that attached to the medical examiner's report was the investigator's report, which appears to have been prepared by an Officer J. Brite. Appellant claims that this report "contains considerable inadmissible hearsay, such as Sgt. Alderetti's description of the incident." The portion of the report to which appellant directs us is as follows:

> According to Sergeant Alderetti, the decedent got into an argument which accelerated to a fight with Raymond E. Marlowe, at 8325 LaPorte Road. During the altercation, Marlowe stabbed the decedent in the chest with a folding pocket knife. The stabbing occurred at approximately 2:00 p.m., on March 31, 1990. Marlowe was taken into custody by Houston Police Department[.]

We agree that this is hearsay and even hearsay within hearsay. However, appellant's own testimony contained essentially the same information. The evidence was cumulative and its admission was harmless. Appellant has failed to show prejudice from trial counsel's failure to object to this evidence.

## D. Physical Evidence From Motel Room

Appellant next claims that trial counsel was ineffective in failing to object to the admission of some of appellant's personal effects and a knife that was purportedly the murder weapon, labeled as State's exhibits 22 and 21, respectively. Appellant complains that these items were seized in a warrantless, nonconsensual search of his rented motel room. State's exhibit 22 included some cash, cigarette papers, a label from a whiskey bottle, some unidentified personal papers, and appellant's wallet. Trial counsel affirmatively stated that he had no objection to this evidence. Appellant fails to show how the admission of this evidence could possibly have prejudiced him. Nor does he show why trial counsel should have objected to it. Appellant has failed to meet his burden under the *Strickland* test as it relates to State's exhibit 22.

Appellant next contends that trial counsel failed to object to the admission of State's exhibit 21, the knife that appellant used in the killing. The record does not support appellant's argument on this point. The record shows, to the contrary, that trial counsel objected no less than four times to the admission of the knife. The first three

---

**2.** Immediately after the statement was introduced into evidence, trial counsel objected to the State's witness reading it aloud for the jury, and he requested that the members of the jury be allowed to read it for themselves. This objection was overruled.

objections were sustained. The fourth was overruled, and the knife was admitted during questioning of the assistant medical examiner. Trial counsel then cross-examined the assistant medical examiner in an attempt to dissociate the knife from appellant. We cannot agree with appellant's characterization that this performance by trial counsel constituted ineffective assistance. Appellant has failed to meet the deficiency prong of the *Strickland* test.

We overrule points of error one and two.

## Fundamental Error

■■■ In his third and fourth points of error, appellant asserts that the trial court committed fundamental error in failing to instruct the jury on the defense of property, and in failing to instruct on self-defense as applied to prevention of robbery or aggravated robbery.[3] Appellant concedes that the trial court's failure to include unrequested instructions is not fundamental error unless it is so egregious that it deprived appellant of a fair and impartial trial. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984). He claims that the trial court's failure to so instruct satisfies *Almanza,* and that the conviction should be reversed and remanded for a new trial.

The Court of Criminal Appeals has expressly declined to impose a duty on the trial court to submit unrequested instructions *sua sponte. White v. State,* 495 S.W.2d 903, 904 (Tex.Crim.App.1973). It cannot be said that the trial court committed fundamental error in failing to perform a duty that it did not owe. To the contrary, had the trial court provided the instructions when appellant indicated no objection to the charge, the trial court would have interfered with counsel's constitutionally protected independence. *See Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.

We overrule points of error three and four.

We affirm the judgment of the trial court.

ANDELL, J., dissenting.

---

3. This argument is an alternative presentation of the same complaint that he brings forth in points of error one and two: either counsel was ineffective in failing to request these instructions in the

ANDELL, Justice, dissenting.

I respectfully dissent. Appellant bases his ineffectiveness argument on trial counsel's failure to request instructions on two defenses raised by the evidence, while allowing instructions on a defense that was not raised by the evidence. This is not sound trial strategy. As the excerpts below show, the evidence raised the issues of defense of property and self-defense as it relates to preventing robbery or aggravated robbery. The evidence did not raise either voluntary manslaughter or self-defense as defined in the jury charge.

I agree with the majority that theories of defense to be included in the jury charge generally fall within trial counsel's wide latitude to make strategic and tactical decisions. However, where the undisputed evidence shows that appellant caused the death of complainant, it cannot be within trial counsel's latitude to ignore available defenses and pursue one that is unavailable. This cannot satisfy the meaning of the sixth amendment guarantee of right to counsel. I would hold that counsel's failure to request instructions on at least one viable defense constituted ineffective assistance.

The following excerpts from defense counsel's opening statement and closing argument suggest that he intentionally omitted the theories of defense of property and of self-defense as it relates to preventing robbery or aggravated robbery:

### Opening Statement

We intend to show, without any question, it was justified sticking, stabbing, killing, whatever you want to call it. There's no question we have a dead man. We intend to show there's a dead man.

You're going to find the evidence is going to show—we intend to bring it out, one stab wound, not a bunch, but one that occurred. Mr. Marlow would tell you, yes, he did in a statement taken just a few hours later, we intend to show he was

jury charge, or the trial court committed fundamental error in failing to include these instructions *sua sponte.*

intoxicated. Regardless he says, *you have to get the intent from that statement.* We intend we're going to show you in that statement it says I didn't kill him this time, but next time I will. If he jumps on me again I'll stab him 500 times, not 50. The statement says 500.

Remember when the statement comes in we intend to use—the gentleman's intoxicated, the language I told you would come out, hope you don't fall on your ears. We've all heard it before. It is rank, *but the issue in this case will be self-defense, justified killing from this defendant's point of view at the time.* That's all the Judge will tell you later. That's all you can justify from his viewpoint at the time.

(Emphasis added.)

The "rank" statement to which defense counsel was referring was appellant's written confession, which stated:

Harold Ashlock jump [sic] on me and I stuck him with a pocket knife. Yea I stick him again five hundred more times, that mother f———. F— the judge too, f— Huntsville. I will do my time, if I get out I will stick him again. It dont [sic] make a different [sic], I am going to do life. *I had to do what I had to do,* thats [sic] not the first time he jumped on me. *He will not jump on me again. I will kill him next time, I will make sure he's dead next time.* If he thinks I [sic] f——— lying, try me. I kill that mother f——— dead like a f——— rat, worst [sic] then [sic] a f——— rattle snake.

(Emphasis added.)

Defense counsel told the jury to determine appellant's intent at the time of the stabbing from this written statement. The record shows that appellant signed this written statement at 4:55 p.m. on March 31, 1990, a few hours after the stabbing. As the statement shows, appellant thought that he had not yet killed complainant, but that he intended to do so the "next time" that complainant jumped on him. At the time appellant gave this written statement to the police,

complainant was in the hospital. Complainant was pronounced dead 59 minutes later.

Defense counsel contended that appellant's assertion that he will "kill him next time" by stabbing him 500 times showed that appellant did not intend to kill complainant with that single stab to the chest. Defense counsel continued his opening statement by asserting the defensive theory of self-defense, with no mention of the theories appellant now raises on appeal. In closing argument, defense counsel reiterated his apparent defensive strategy:

### Closing Argument

*Murder, voluntary manslaughter, self-defense. I told you on voir dire at the very beginning that was going to be the three issues, did I not? I don't think I deviated one step from it.* Further, I told you the Judge would charge you on self-defense as viewed from the defendant's standpoint.[1]

Remember, I've told you that as well. The State, I think, objected. *The Court gave you the charge exactly like I told you he would give it to you.* So, repeatedly, in fact, four times throughout the charge does it say as viewed from the defendant's standpoint at that time. That's where you got to place yourself, in his position, under the circumstances of what occurred at that point to make a decision.

. . . .

The State wants to argue murder. *We're arguing self-defense,* but voluntary manslaughter is in there. What I asked you to please not do, don't compromise and split the difference because, you see, if you put yourself at that scene out there under State Exhibit No. 1 where it occurred and you view it from a defendant who has to walk on crutches, *where's he going to retreat to?* Where's he going to go?

He's sitting on the side of a bed. The man's struck him in the past, and by the way, there is no contradicting evidence whatsoever other than the fact this defen-

---

**1.** Defense counsel refers to his own statements earlier in the voir dire proceedings. Appellant failed to include the voir dire in the record. We must presume that any missing portion of the record supports the conviction.

dant has been jumped on in the past by the deceased, none....

Regardless of that it says in his own statement that they introduced into evidence Harold Ashlock jumped on me, and I stuck him with a pocketknife. *I had to do what I had to do.* That's not the first time he jumped on me. No evidence whatsoever to show anything other than this ain't the first time it happened to him.

*What's the man going to do that can't run?* He can't walk without his crutches. Tell the man oh, wait a minute; don't jump on me; let me get my crutches on? Talking about what a reasonable person would do at the time of this occurence [sic], what was the defendant to do? Drunk or not drunk even if he was stone sober if you had to have crutches to walk on and *a man takes your money and starts to hit you again as he had in the past, are you going to say let me get me [sic] crutches so I can retreat?* That is not common sense. It cannot be done. You're not going to do it. I wouldn't do it.

[PROSECUTOR]: I have to object to what Mr. Epps would or would not do. He's not—have to argue it from a reasonable person looking at it from the defendant's—

THE COURT: Sustained as to your opinion.

[DEFENSE COUNSEL]: What would a reasonable person do? What would you do? ... If you take your common sense back to that jury room too are you going to say as a person in that position hey, wait a minute until I get my crutches so I can retreat? I don't think so.

You see, this defendant, whether you like him personally or not, has got the right to that same defense. The law is made for him as well as it is Harold Ashlock. *They both chose their life....*

....

The State says, you know, he shouldn't be—just don't look like murder to this man or he wasn't *in reasonable fear of his life.* How does the State know? We weren't

there. You got to view it from what we know at the time. *He had a right to get him off of him and get his money back or stop him from stealing his money or whatever.* You know, neither one of us can argue—we can argue both sides all day long and still it comes right back down the way that you see what happened. And as the Court tells you when you read that charge you'll read that charge and look at it. You are viewing it from his standpoint at the time. It is not necessary that there be an actual attack or an attempted attack.

*A person has a right to defend his life and person from apparent danger as fully and to the same extent as he would had the danger been real* as viewed from Raymond Marlow's viewpoint at the time. *Self-defense applies.* Sickening, whatever, but the law still applies to Raymond Marlow. We ask for a not guilty verdict. Thank you.

(Emphasis added.)

As shown in these excerpts from closing argument, defense counsel apparently never intended to go to the jury on the defensive theories appellant now raises. From the beginning to the end of trial, the apparent defensive strategy was self-defense.[2] Appellant claims on appeal that the evidence failed to support a self-defense theory. I agree. Appellant contends that the only defensive theories supported by the evidence would be either defense of property or self-defense as related to prevention of robbery or aggravated robbery.[3] I again agree. Appellant concludes that defense counsel's failure to request a jury instruction on the only viable defenses constituted ineffective assistance of counsel. In support of this argument, appellant cites *Vasquez v. State,* 830 S.W.2d 948 (Tex.Crim.App.1992).

The appellant in *Vasquez* had been convicted for possession of a firearm by a felon, and we affirmed. 796 S.W.2d 555, 562 (Tex. App.—Houston [1st Dist] 1990), *rev'd,* 830 S.W.2d 948 (Tex.Crim.App.1992). The Court of Criminal Appeals observed that the evidence raised the issue of necessity, which

---

**2.** In the words of defense counsel at closing argument: "We're arguing self-defense...."

**3.** These defenses are provided in Tex.Penal Code Ann. §§ 9.32, .42 (Vernon 1974 & Supp.1994).

would have been a defense to the charged offense, yet the defense counsel failed to request a necessity instruction. The Court reversed and remanded for new trial, holding that the appellant received ineffective assistance of counsel for failing to request a jury charge on the only viable defense available. 830 S.W.2d at 949, 951.

In *Vasquez,* defense counsel had pursued a defense of self-defense, which was unavailable *as a matter of law* for the charged offense in that case (possession of a firearm by a felon). 796 S.W.2d at 558–559. The jury charge in *Vasquez* contained *no* defensive theory. 796 S.W.2d at 559. Appellant's argument in the present case rests upon the premise that the evidence did not support the self-defense theory, which defense counsel asserted throughout the trial. Appellant claims that the only way the evidence addressed the issue of self-defense was in terms of preventing robbery or aggravated robbery. He concludes that self-defense was unavailable to him under the evidence.[4] This differs from *Vasquez,* where self-defense was unavailable as a matter of law. 796 S.W.2d at 558–559.

It is necessary to examine appellant's claim that there is no evidence supporting a theory of self-defense. The jury charge on self-defense stated, in essence, that appellant would have been justified in using deadly force if and only if he reasonably believed that it was immediately necessary to protect himself against complainant's use of deadly force, and that a reasonable person in his situation would not have retreated. This follows the language of the statute. TEX.PENAL CODE ANN. § 9.32(1), (2), (3)(A) (Vernon Supp.1994).[5]

Appellant testified that complainant had jumped on him and hit him in the past on about six or seven occasions when they had been drinking together. Appellant then testified on direct examination as follows:

Q. State what happened then, sir, when you saw him taking your money.

A. Okay. *I went to stop him from taking my money. He went to hit me.*

Q. All right. Then what did you do?

A. I grabbed that knife, and I stuck him.

Q. One time or two times?

A. Just once, *enough to get him off me.*

Q. Was he literally on you?

A. Almost. He was close enough where I could go like that though.

Q. What happened after you stuck him?

A. He stopped. He just sat down and all of a sudden he laid down in the bed, and that was it.

. . . .

Q. When you testified earlier, sir, that he came at you—

A. Yeah.

Q. What happened exactly? Can you tell the jury the specifics, exactly what happened or how it happened?

A. *All I know is he went for my money.* I went to stop him, and that's when he started hitting me. I grabbed the knife and stuck him and *there was no place for me to go to.* I can't get up and stand up and fight him.

Q. At any time during this period of time were you afraid of the guy at all or anything?

A. *Afraid he was going to hurt me like he's done before.*

Q. Did you have any—do you feel that you had any choice to do what you did?

A. Well, *it was either do that or let him beat the hell out of me and take my money and leave.*

. . . .

Q. Could you have done anything else other than what you did do at that time other than stick him?

---

**4.** Appellant further contends that the lesser charge of voluntary manslaughter, which would have diminished his culpability, was not supported by the evidence. Because I would dispose of this appeal on the jury charge argument, I do not address this contention.

**5.** Appellant's complaint is, in part, that the remaining part of the statute, section 9.32(3)(B), was not included in the jury charge.

A. No. Like I said, I can't get up and fight him. I can't do that because I can't walk.

(Emphasis added.)

In this excerpt, appellant testified on one of the elements of self-defense, the issue of retreat: "[T]here was no place for me to go to." We must next consider whether appellant reasonably believed that his own use of deadly force was immediately necessary to protect himself from complainant's use of deadly force. Appellant's testimony quoted above shows that appellant believed complainant would hurt him, *but he never indicated a belief that complainant was using deadly force against him.*

The use of deadly force is not justified against someone who attacks with lesser force. Although appellant testified that he was attacked by complainant, he never testified that complainant's attack involved deadly force. Therefore, self-defense as defined in the jury charge was not available to appellant under the facts of this case.[6] Defense counsel insisted that it was, and he urged that the jury consider it.

As stated above, appellant contends that defense counsel was ineffective in failing to request the jury charge on defense of property and self-defense as related to prevention of robbery or aggravated robbery. These two defenses were raised by the evidence, as shown in appellant's testimony quoted above. The failure to include these two available defenses appears to have been a part of defense counsel's strategy, which we must not review through the distorting effects of hindsight. *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Ingham v. State,* 679 S.W.2d 503, 509 (Tex.Crim.App.1984).

However, right after appellant had testified and had never said that he was in fear of his life, defense counsel proceeded to argue self-defense based on appellant's fear for his life. Appellant's testimony does not give rise to an inference that he was in fear of his life. Appellant testified that he stabbed complainant "enough to get him off me." This was a use of deadly force that was *not* in response to deadly force by complainant. Self-defense as defined in the charge did not apply even though defense counsel argued that it did. The evidence did not support the argument. It is not a matter of distorted hindsight to recognize this as ineffectiveness.

Appellant testified that stabbing complainant was the only way he could stop him from taking his money: "[I]t was either do that or let him beat the hell out of me and take my money and leave." This testimony raises both defense of property and self-defense as it relates to preventing a robbery or aggravated robbery. Defense counsel even referred to this part of appellant's testimony during closing arguments: "He had a right to get him off of him and get his money back or stop him from stealing his money or whatever." This suggests that defense counsel may have considered these two additional defenses, but he never requested a jury charge on them. He followed this comment by returning to the self-defense theory: "A person has a right to defend his life and person.... Self-defense applies."

The State relies on *Riddick v. State,* 624 S.W.2d 709, 712 (Tex.App.—Houston [14th Dist.] 1981, no pet.) and *Lynn v. State,* 860 S.W.2d 599, 603 (Tex.App.—Corpus Christi 1993, pet. ref'd). Each of these two cases involved a claim that defense counsel was ineffective for failing to request a jury charge on lesser included offenses. *Riddick,* 624 S.W.2d at 711; *Lynn,* 860 S.W.2d at 602. In *Riddick,* the apparent defensive strategy was to show that the State could not prove an element of the charged offense of aggravated robbery, namely, that appellant used a firearm. 624 S.W.2d at 710–711. Hence, the failure to request a charge on the lesser-included offense of robbery was an acceptable part of trial strategy. *Id.* at 711. In *Lynn,* the apparent defensive strategy was to show that the State could not prove an element of the charged offense of murder, namely, that appellant intentionally or knowingly fired the fatal shot. 860 S.W.2d at 603. In each of those two cases, the defensive trial strategy forced the jury to choose between conviction of the charged offense and acquit-

**6.** As noted above, this differs from *Vasquez,* where self-defense was unavailable as a matter of law to the charged offense of possession of a firearm by a felon. 796 S.W.2d at 558–559.

tal, without considering a lesser-included offense. The appellate courts held that the complained-of failures did not constitute ineffectiveness, and they affirmed the convictions. *Lynn*, 860 S.W.2d at 603; *Riddick*, 624 S.W.2d at 712. Neither of those two cases, however, involved omitted theories of defense that were raised by the evidence. *Riddick* and *Lynn* are both distinguishable, and neither controls.

Defense counsel's apparent strategy in the present case failed to provide two available defenses to appellant, either of which could theoretically have led to his acquittal. Given appellant's admission that he stabbed complainant in the chest, coupled with the evidence that complainant died as a result, appellant's "conviction was a foregone conclusion" without those instructions.[7] *See Vasquez*, 830 S.W.2d at 951 (quoting from Justice Cohen's dissent at 796 S.W.2d at 562).

By forcing the jury to choose between conviction and an unavailable defense, while failing to provide two viable alternative defenses, defense counsel's strategy fell outside the wide latitude of constitutionally protected independence. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. By this single omission, defense counsel failed to act as the counsel guaranteed by the sixth amendment to the United States Constitution. 466 U.S. at 687, 104 S.Ct. at 2064.

I would hold that defense counsel's failure to request a jury instruction on two available defenses that were raised by the evidence, when the only defense he pursued was unavailable under the facts of this case, was both deficient and prejudicial to the appellant. Hence, this constituted ineffective assistance of counsel under the *Strickland* test. 466 U.S. at 687, 104 S.Ct. at 2064.

I would sustain appellant's first and second points of error, and would reverse and remand for a new trial.

---

7. Even if appellant had shown "sudden passion" and "adequate cause," necessary to lower murder to voluntary manslaughter, conviction would still have been the result.