

# NUMBER 13-18-00168-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ORRY ARTHUR,                                                    Appellant,

v.

THE STATE OF TEXAS,                                            Appellee.

### On appeal from the 24th District Court
### of De Witt County, Texas.

# MEMORANDUM OPINION

### Before Justices Benavides, Hinojosa, and Tijerina
### Memorandum Opinion by Justice Tijerina

A jury convicted appellant Orry Arthur of evading arrest with a motor vehicle, a third-degree felony. *See* TEX. PENAL CODE ANN. § 38.04. By his sole issue, Arthur argues that he received ineffective assistance of counsel. We affirm.

## I. BACKGROUND

At trial, the State presented the following witnesses during its case in chief: a police dispatcher, a sheriff's deputy, police officers from Cuero and Yoakum, Texas, and an eyewitness. Several law enforcement officers testified that they witnessed Arthur driving at high rates of speeds up to 135 miles per hour, and although they initially pursued him, their attempts to apprehend him failed due to his high rate of speed. The eyewitness testified that Arthur collided into a residential fence and fled on foot.

Arthur's defense was a lack of intent. He testified that he knew police officers were pursuing him, but he entered a state of panic because at the time he was concerned about the well-being of his parents. A jury convicted him of evading arrest with a motor vehicle and sentenced him to six years' imprisonment. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

For the first time on appeal, Arthur argues that he received ineffective assistance of counsel because his trial counsel: (1) failed to seek a plea bargain offer; (2) presented "irrational" and "unsound" trial strategies; (3) "lacked a basic understanding of a trial"; (4) failed to take "pre-trial notice of the State seeking a deadly weapon finding"; (5) allowed Arthur to testify; (5) violated court orders[1]; and (6) tried to enter a plea of nolo contendere mid-trial.

### A. Standard of Review and Applicable Law

For a claim of ineffective assistance of counsel to be sustained, an appellant must satisfy the two-prong test set forth under *Strickland v. Washington*, 466 U.S. 668, 687

---

[1] In his brief, Arthur does not further elaborate on which "court orders" his trial counsel allegedly violated other than not seeking a plea bargain offer. Therefore, there is nothing for us to review as this issue is inadequately briefed. *See* TEX. R. APP. P. 38.1(i).

(1984). Under the first prong, an appellant must show by a preponderance of the evidence that counsel's performance fell below an objective standard of reasonableness and prevailing professional norms. *Id*.; *Chapa v. State*, 407 S.W.3d 428, 431 (Tex. App.—Houston [14th Dist.] 2013, no pet.). To evaluate the effectiveness of counsel's performance, we look at the totality of the representation. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Any claim for ineffectiveness of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 814. If the record is silent on the motivation behind counsel's tactical decisions, an appellant usually cannot overcome the strong presumption that counsel's representation was reasonable. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (en banc).

Because "the record is generally underdeveloped," direct appeal is usually an inadequate vehicle for claims of ineffective assistance of counsel. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012). Additionally, courts are hesitant to declare a counsel's performance as deficient until counsel has been afforded an opportunity to explain the reasoning behind the performance. *See id*. For that reason, "we commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it." *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005).

Under the second prong, an appellant must show that counsel's performance prejudiced the defense such that there was a reasonable probability that, but for counsel's unprofessional errors, the outcome of the trial would have been different. *See Strickland*,

3

466 U.S. at 687.

**B.    Discussion**

**1.  Plea Bargain**

Arthur first claims that his counsel was deficient for making "zero effort to seek any plea bargain offer in the face of overwhelming evidence of [Arthur's] guilt." However, Arthur did not file a motion for new trial due to ineffectiveness assistance of counsel. Because he did not move for a new trial, his counsel was not given the opportunity to explain any reasoning behind his conduct. *See Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). Thus, we will assume a strategic motive if any can be imagined and find his counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it. *See Andrews*, 159 S.W.3d at 101.

"[T]o establish prejudice in a claim of ineffective assistance of counsel in which a defendant is not made aware of a plea-bargain offer . . . the [defendant] must show a reasonable probability that:  (1) he would have accepted the earlier offer if counsel had not given ineffective assistance; (2) the prosecution would not have withdrawn the offer; and (3) the trial could would not have refused to accept the plea bargain." *Ex parte Argent*, 393 S.W.3d 781, 784 (Tex. Crim. App. 2013). Here, there is nothing in the record that demonstrates Arthur would have taken the plea but for his counsel's failure to seek a plea bargain offer. Moreover, because his counsel was not afforded an opportunity to explain his actions, we could conceive that Arthur's counsel's strategy was to seek a lesser sentence from a jury as compared to the sentence the State offered in its plea bargain. *See Andrews*, 159 S.W.3d at 103. Therefore, Arthur has not overcome the

4

strong presumption that his counsel provided reasonable assistance. *See Mallett*, 65 S.W.3d at 63; *Thompson*, 9 S.W.3d at 813–14.

### 2. Trial Strategy

Next, Arthur argues his trial counsel was ineffective because he sought an acquittal based on "irrational" trial strategies. Because Arthur raises his ineffective assistance claim on direct appeal, counsel again has not had an opportunity to respond to these areas of concern. *See Rylander*, 101 S.W.3d at 107; *see also Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002) ("The reasonableness of counsel's choices often involves facts that do not appear in the appellate record," and thus a writ of habeas corpus is the more appropriate vehicle to raise an ineffective assistance of counsel claim.); *see also Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002) (finding that trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced ineffective). It is logical to conclude that counsel, faced with overwhelming evidence of Arthur's guilt, chose to proceed with a defense of lack of intent as a matter of trial strategy, which is within his prerogative. *See Marlow v. State*, 886 S.W.2d 314, 317 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) ("Trial counsel may pursue one reasonable defensive theory and exclude others; this is within his constitutionally protected independence under *Strickland*.").

Arthur also claims that his counsel's "irrational" trial strategies included calling Arthur's mother, Cindy Arthur, and Officer Shane Carver as witnesses because the State elicited harmful testimony from them on cross-examination. However, decisions over presenting witnesses are largely a matter of trial strategy. *See Robinson v. State*, 514 S.W.3d 816, 824 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). Because we do not

5

have a record of counsel's strategy for calling these witnesses during the punishment phase, we will only find his decision deficient if it was so outrageous that no competent attorney would have engaged in it. *See Andrews*, 159 S.W.3d at 101.

Officer Carver testified that it appeared to him Arthur was driving under the influence of a narcotic and additionally charged him with driving while intoxicated (DWI). In this regard, counsel might have theorized that Arthur's best chance of an acquittal was Officer Carver's testimony that a negative toxicology report could have influenced the district attorney's decision to dismiss the DWI charge. Additionally, Officer Carver stated that Arthur displayed symptoms, such as slurred speech and glassy, bloodshot eyes, which indicated he could have been suffering from a closed-head injury instead of possible intoxication. Moreover, Cindy testified Arthur's father was suicidal and described the struggles between him and Arthur, which could have made Arthur sympathetic to the jury. Although the State on cross-examination entered Arthur's jail call to Cindy into evidence, in which she criticized and scolded Arthur, under the circumstances of this case, we cannot conclude that counsel's decision to call Officer Carver or Cindy was so outrageous that no attorney would engage in it. *See Robinson,* 514 S.W.3d at 824; *Andrews*, 159 S.W.3d at 101. Accordingly, Arthur has failed to show that calling these witnesses amounted to ineffectiveness assistance of counsel.

### 3. Trial and Enhancement

Arthur argues that his trial counsel lacked a basic understanding of a trial, failed to take "pre-trial notice" of the State's intent to seek a deadly weapon finding, and did not know or research the significance of this enhancement. However, Arthur does not demonstrate that but for his counsel's performance, the outcome of trial would have been

6

different. *See Rylander*, 101 S.W.3d at 107. In this regard, multiple law enforcement officers testified that Arthur's use of his vehicle at such a high rate of speed for at least twenty-seven minutes jeopardized multiple lives by nearly striking other vehicles. The officers further testified that they were unable to deploy spike strips to prevent him from traveling into town, which further endangered others. In fact, Arthur testified that their testimony was correct: he knew police officers were chasing him while "he had his foot to the floor," and he disregarded traffic signals and speed limit signs. Thus, absent evidence of counsel's strategy, we cannot denounce counsel's action of failing to take "pre-trial notice" of a deadly weapon finding as ineffective, nor can we determine that there is a reasonable probability that the outcome would have been different had counsel "researched the significance of this enhancement." *See Thompson*, 9 S.W.3d at 813; *see also Moore v. State,* 520 S.W.3d 906, 913 (Tex. Crim. App. 2017) (holding that a motor vehicle may become a deadly weapon if the manner of its use can cause death or serious bodily injury).

Arthur also complains his trial counsel was ineffective because he lacked an understanding of why a plea of nolo contendere could not be entered in the middle of the trial. However, "claimed ineffective assistance of counsel may or may not have a direct nexus with the defendant's guilt or innocence." *Martinez v. State*, 109 S.W.3d 800, 803 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.). Here, Arthur did not enter a plea of guilty or nolo contendere, and instead proceeded to trial. Therefore, we find that the jury's verdict and sentence was rendered independent of and is not supported by the alleged ineffective assistance of counsel claim. We reject this argument.

### 4. Testimony

7

Lastly, Arthur argues his trial counsel was ineffective for allowing him to testify. Ultimately, the decision to testify rested solely on Arthur. *See Smith v. State*, 286 S.W.3d 333, 338 n.9 (Tex. Crim. App. 2009); *Johnson v. State*, 169 S.W.3d 223, 235 (Tex. Crim. App. 2005). In fact, trial counsel may be held deficient for depriving a defendant of his right to testify. *See Johnson*, 169 S.W.3d at 235. Nonetheless, outside the presence of the jury, the trial court admonished Arthur of his right not to testify on more than one occasion and that Arthur would be subject to cross-examination and self-incrimination to which Arthur replied: "I believe it is best I do." Arthur also informed the trial court that he had the opportunity to confer with his trial counsel about the decision to testify. Thus, the record reflects that Arthur conferred with his counsel and was admonished by the trial court before testifying. *See Andrews*, 159 S.W.3d at 101.

In light of the foregoing, we cannot conclude that it fell below an objective standard of reasonableness or that the outcome of Arthur's trial would have been different based upon the totality of the evidence. Considering the overwhelming evidence of guilt and the additional punishment evidence, including Arthur's jail calls and the deadly weapon enhancement, we cannot conclude that but for counsel's performance, the jury would not have sentenced Arthur to six years' imprisonment. Failure to make either of the required showings of deficient performance and sufficient prejudice defeats the claim of ineffective assistance. *Thompson*, 9 S.W.3d at 813. We overrule his sole issue.

### III. CONCLUSION

We affirm the judgment of the trial court.

JAIME TIJERINA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
19th day of December, 2019.