Arness WHITE, Appellant,

v.

The STATE of Texas, Appellee.

No. B14–92–00689–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

March 24, 1994.

Rehearing Overruled April 21, 1994.

Brian W. Wice, Houston, for appellant.

Rikke Graber, Houston, for appellee.

Before MURPHY, SEARS and DRAUGHN, JJ.

### OPINION ON MOTION FOR REHEARING

DRAUGHN, Justice.

After consideration of appellant's motion for rehearing, we withdraw our previous opinion and replace it with the following.

A jury found appellant guilty of aggravated robbery. After finding both of the two enhancement paragraphs true, the trial court assessed punishment at sixty-five years imprisonment. In ten points of error, appellant asserts the trial court improperly permitted the state to amend the indictment against appellant; the trial court committed reversible error in denying appellant's motion to suppress a knife and certain oral statements obtained as the result of an improper frisk and custodial interrogation; and the trial

court erred in failing to file written findings of fact and conclusions of law with regard to the oral statements. Appellant further makes certain *Batson* challenges under the U.S. and Texas Constitutions, and claims the trial court permitted the state to indulge in improper jury argument. Finally, appellant asserts that he was improperly denied the opportunity to present a videotape of the identification lineup, in order to cross-examine the complainant about the individuals other than appellant who participated in the lineup. We overrule all points of error, and affirm the verdict.

The record reflects that around midnight on July 31, 1991, Ms. Tammy Pinson drove to a small convenience store to purchase milk for her two-year-old son. She and her two children were spending the night with her mother. Upon arriving at the store, Ms. Pinson approached the front door, as the lights were on and she saw employees inside. However, upon attempting to enter, she found that the store had already been closed for the night. As she returned to her truck, two men came toward her from the side of the store. Appellant threw a bicycle in the back of Pinson's truck, and proceeded to enter the truck on the passenger side. He held a large folding knife to Ms. Pinson's neck as the other man cursed her and told her to move over so that he could get in the driver's seat. This placed Ms. Pinson between the two men.

Ms. Pinson testified that as they drove away in her truck, she believed she was in great danger and was going to die. The men continued to curse her, and hit her several times. They repeatedly threatened that she "had better have some money." Appellant pulled on her head, and held the large knife in his hand throughout the incident.

The driver eventually pulled the truck off the road near a trash dump. Appellant ordered Ms. Pinson out of the truck. He led her to the rear of the vehicle while the driver remained at the wheel. Appellant, knife in hand, then asked Ms. Pinson to remove her clothes. Apparently she did not do so, and appellant eventually pulled them off himself and fondled her breast. The driver became impatient and related his urgency to appel-

lant. The two men argued, but finally appellant returned Ms. Pinson's clothes and the two men drove away.

Ms. Pinson dressed and ran to find help. A woman driving down the street saw her and returned her to her mother's house, where her mother called the police.

Around 3:15 a.m. that same night, the police located her truck parked in front of a known crack house. After being dusted for fingerprints, the truck was returned to Ms. Pinson.

The next night, August 2nd, Houston Police Officer N.R. Coon picked up an informant who told him that he knew someone that might have information about the case. The informant accompanied Officer Coon in the patrol car, and identified appellant, who was riding a bicycle, as the person with the information.

Officer Coon stopped to talk with appellant, who, upon being asked, said his name was Ernest Brown, but had no identification to confirm this. The officer asked if he had any knowledge about who had been driving Ms. Pinson's truck. Appellant said that he did, and offered to take Officer Coon to a person by the name of Mickey Thompson. Since appellant would be riding in the patrol car, Officer Coon performed a frisk pursuant to police department procedure, in order to insure no weapons were carried into the car. This frisk produced a large folding knife, which was found in appellant's back pocket.

Appellant then took Officer Coon to a house located at 7633 Sundown Street, and told him that Mickey Thompson could be found there. Coincidentally, Officer Coon was acquainted with the occupants of that home and knew that no one lived there by that name.

Officer Coon then told appellant he needed to substantiate his identity. Appellant took him to, 8311 Dockal Street, to speak to his wife. However, appellant's wife informed the policeman that his name was not Ernest Brown, but was, instead, Ricky White. This conflict made Officer Coon suspicious of appellant, but he still had no probable cause to arrest him for the robbery. Officer Coon decided to arrest him for the offense of rid-

ing a bicycle at night without a headlight. Later that day, appellant participated in a lineup at which Ms. Pinson unequivocally identified appellant as the perpetrator.

In point of error one, appellant contends the trial court committed reversible error when, prior to voir dire, it permitted the prosecution to delete the words "use a" from the indictment. Appellant argues that this deletion results in an amendment to the indictment, entitling appellant's counsel to a ten-day notice period pursuant to TEX.CODE CRIM.PROC.ANN. art. 28.10 (Vernon 1989). The state contends this deletion was not an amendment which changes or alters the offense charged, but merely an abandonment of one of the allegations.

Prior to the deletion of those words, the indictment read in pertinent part:

> [w]hile in the course of committing theft of property owned by TAMMY PINSON and with intent to obtain and maintain control of the property, intentionally and knowingly threaten[ed] and place[d] TAMMY PINSON in fear of imminent bodily injury and death, and the Defendant did then and there *use a* exhibit a deadly weapon, to wit, A KNIFE. (emphasis added).

At the arraignment, the state moved to delete the words "use a" from the indictment, by bracketing those words and handwriting the word "abandoned" underneath them. The trial court granted this request over appellant's ardent objections.

Appellant argues that the writing of the word "abandoned" on the charging instrument effected an amendment to the indictment. Generally, an amendment becomes effective when the charging instrument is physically altered to reflect the change sought to be made. *See Rent v. State*, 771 S.W.2d 723, 727 (Tex.App.—Dallas 1989) *aff'd per curiam*, 838 S.W.2d 548 (Tex. Crim.App.1990).

Appellant cited in his brief and during oral argument many cases upon which he relies to support his position that the deletion or abandonment of the words "use a" constituted an amendment entitling him to ten days notice. However, appellant's reliance on these cases is misplaced. In the cases cited

by appellant, there was no question that an actual amendment was being sought, and furthermore, each of those cases dealt with clear changes and amendments which affected substantially the charges against the defendants. *See e.g., State v. Murk*, 815 S.W.2d 556 (Tex.Crim.App.1991) (Amendment to delete portions of indictment resulted in a failure to allege the essential element of intent to commit the crime); *Hillin v. State*, 808 S.W.2d 486 (Tex.Crim.App.1991) (State attempted to make a trial amendment *after* trial on the merits had commenced); *Boutte v. State*, 824 S.W.2d 322 (Tex.App.— Houston [1st Dist.] 1992, pet. ref'd) (Attempted deletion of the word "aggravated" in an enhancement paragraph during the punishment phase of the trial resulted in improper amendment requiring reversal); *Rent*, 771 S.W.2d at 727 (State attempted to add the words "oral and anal" before the words "deviate sexual intercourse," significantly altering the original indictment).

It is clear from the wording of the original indictment that what was intended was "use *and* exhibit." It has long been established in Texas that when a charging instrument alleges an offense in the conjunctive, as with the use of the word "and," it is proper to charge the jury in the *disjunctive* form by using the word "or." *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex.Crim.App. 1991); *Robinson v. State*, 596 S.W.2d 130, 133–34 (Tex.Crim.App.1980). The decision to abandon one of two alternative allegations as to the manner of committing the offense is not an amendment of the indictment within the meaning of TEX.CODE CRIM.PROC.ANN. art. 28.10 (Vernon 1989). *Garcia v. State*, 537 S.W.2d 930, 933 (Tex.Crim.App.1976); *Holder v. State*, 837 S.W.2d 802, 806 (Tex. App.—Austin 1992, pet. ref'd). Subsection (c) of art. 28.10 provides:

> An indictment or information may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced.

In the present case, the alleged amendment neither charged appellant with a new offense nor prejudiced any of his substantial rights. Since the jury could have been charged in the disjunctive, the state would have had the option to prove only that appellant "exhibited" a knife during the commission of the crime. In fact, the state's burden may have been heavier after the deletion of the words "use a" because the state then only had one theory on which to convict appellant, as opposed to giving the jury two possible choices from which to pick. We hold that the deletion and abandonment of the words "use a" did not constitute an amendment to the indictment within the meaning of art. 28.10, but was merely an abandonment of one of the alternative theories as to how the crime was committed.

In further support of his position that the trial court committed reversible error in allowing this abandonment, appellant directs us to the Court of Criminal Appeals decision in *Sodipo v. State*, 815 S.W.2d 551 (Tex.Crim. App.1990). He vigorously argues that *Sodipo* is determinative of the issue in this case because it holds that a proper and timely objection to any attempted amendment, whether of form or substance, to the charging instrument made prior to, or on the day of, trial must be granted. *Id.* at 556; *see also* Tex.Code Crim.Proc.Ann. art. 28.10(a) (Vernon 1989). We acknowledge that holding, and would further point out that the opinion goes on to state that to amend at any other time is error. *Id.* (f.4). We do not argue with the holding of *Sodipo*. Rather, we find that the action of the State here is not an amendment within the meaning of Art. 28.10, but is simply an abandonment of one alternative allegation as to the manner of committing the offense. *Holder, supra*, 837 S.W.2d at 806. In *Holder* the abandonment occurred "at trial". If *Holder* is correct, the time of the abandonment would seem irrelevant. As we view it, a decision by the State to abandon on the day of trial should not change the nature of the action from an abandonment to an amendment. If, as appellant suggests, the mere fact of bracketing the two words "use a" and writing the word "abandoned" on the charging instrument transforms abandonment into an amendment, then it would appear that form over substance has been judicially elevated into an art form so as to create reversible error.

Appellant also refers us to other cases he contends are contrary to our reasoning here. *State v. Murk*, 815 S.W.2d 556 (Tex.Crim. App.1991); *Kennerson v. State*, 848 S.W.2d 883 (Tex.App.—Houston [14th Dist.] 1993, no pet.); *Jones v. State*, 821 S.W.2d 234 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd). We find these cases distinguishable. None involved an abandonment. *Murk* involved a substantive amendment concerning the State's failure to allege a culpable mental state; *Kennerson*, an incorrect date about the commission of the offense; and *Jones* concerned amending an incorrect county alleged in the enhancement paragraph. Each clearly involved amendments, not abandonment, and where properly objected to, warranted a statutory delay for the defendant.

If we and our sister court in *Holder* are not correct, then *Holder* should be specifically overruled and the State put on notice that they are at risk when they decide to abandon such an alternative allegation; that abandonment may be synonymous with reversible error, or that at a minimum, such abandonment may require a ten-day delay. Such a delay would presumably be necessary to enable the accused to prepare anew in order to contend with an abandoned alternative allegation which the state optionally did not have to prove in the first place.

At present we, however, decline to reverse on the facts before us and require another jury trial with no real change in the respective burdens of the state or the appellant. We hold that the trial court did not commit reversible error by approving the state's abandonment of the alternative allegation as noted on the indictment. Accordingly we overrule appellant's point of error one.

■ In point of error two, appellant complains that his motion to suppress should have been granted because the knife was obtained by virtue of an illegal weapons search. We disagree.

■ Generally, a policeman may not conduct an investigatory detention or weap-

ons search unless he observes unusual conduct or articulable facts upon which to base a reasonable suspicion that the suspect may be armed and dangerous. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968). A self-protective search may not be premised upon an unparticularized suspicion or hunch that the individual may be armed. *Harris v. State*, 827 S.W.2d 49, 51 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd).

However, the court of criminal appeals has held that when an officer explains that it is police policy to perform a weapons search before allowing an individual to ride in a patrol car, and the person consents, the search is justified. *Livingston v. State*, 739 S.W.2d 311, 328 (Tex.Crim.App.1987). Officer Coon testified at trial that it was Houston Police Department policy to conduct a weapons search of any individual who is transported in a police vehicle. The state has a justifiable interest in the safety of its police officers, which may be promoted by means of a consensual search before providing transportation. *See Boone v. State*, 735 S.W.2d 306, 309 (Tex.App.—Dallas 1987, no pet.). Appellant volunteered to take Officer Coon to an individual who allegedly had knowledge of who had stolen Ms. Pinson's truck. He was therefore subject to a weapons frisk if he was to accompany the officer in the patrol car. We decline to hold that an officer may not search an individual who voluntarily enters a police car with a policeman. The potential danger is obvious.

Appellant, however, cites us to several cases as support for his position that the weapons search here was unconstitutional. *Lippert v. State*, 664 S.W.2d 712 (Tex.Crim. App.1984); *Davis v. State*, 829 S.W.2d 218 (Tex.Crim.App.1992); *Benavides v. State*, 600 S.W.2d 809 (Tex.Crim.App.1980); *Bell v. State*, 845 S.W.2d 454 (Tex.App.—Austin 1993, no pet.). We do not find any of these cases analogous to the case before us. Outside of the obvious difference that they do not involve a voluntary accompaniment of an officer by the appellant as here, and therefore a precautionary search prior to entering a police car according to police procedure, they are simply not on point. *Lippert* and *Bell*, involve individuals who happened to be present at houses which were to be searched via warrants. The defendants were subjected to searches even though they were not named in the warrants, nor otherwise criminally connected to the premises to be searched. *Davis* involved a valid pat down for weapons which went too far when the officer opened a matchbox found on the accused. Finally, *Benavides* involved an inventory search of an automobile which was legally parked and locked two blocks from the alleged crime scene. These cases are factually inapplicable to the precautionary search before us.

Appellant, however, as if to further accentuate his position that his search was unconstitutional, seizes on the language found in the *Benavides* opinion, and repeated in *Bell*, that "Fourth Amendment protection against unreasonable searches and seizures cannot be whittled away by police regulations or standard operating procedure." *Benavides*, 600 S.W.2d at 812; *Bell*, 845 S.W.2d at 458. We find that appellant glosses over the key defining word in this dramatic language: "unreasonable" searches and seizures. We refuse to find it unreasonable for officers to search individuals for weapons prior to transporting them in a police vehicle. We need not do an in depth analysis of the danger to officers in such situations if precautionary searches are constitutionally prohibited, nor do we need to take judicial notice of recent events which validate the danger. We simply find that, on balance, the inconvenience to the passenger is outweighed by the necessary protection provided to the law enforcement officer. Accordingly, we find that the trial court did not err in denying appellant's motion to suppress the knife found on his person. Point of error two is overruled.

■ Appellant asserts in point of error three that the trial court committed reversible error in allowing the admission of certain oral statements made to Officer Coon as the result of a custodial interrogation. Appellant also argued during submission that the initial questions about appellant's identity and knowledge about the crime may have been permissible. However, since the answers to those questions later proved to be inculpato-

ry, they should not have been admitted into evidence, or should have been preceded by informing appellant of his *Miranda* rights. Appellant thus seeks imposition of a delayed constitutional protection for earlier falsehoods.

In addition to lying about his name, appellant also volunteered to assist Officer Coon in his investigation of the incident. He not only told the officer that he had information about the crime, but endeavored to take him to the home of an alleged suspect. When a person voluntarily accompanies an officer to a certain location, who is then only in the process of investigating a crime, and he knows or should know that the police officers suspect he may be implicated in committing the crime, that person is not, under those circumstances, in police custody. *Livingston*, 739 S.W.2d at 327; *Shiflet v. State*, 732 S.W.2d 622, 631 (Tex.Crim.App.1985). And appellant should not, therefore, be entitled to a pre-constructed constitutional safety net to cover his current falsehoods which later prove to be unhelpful.

Appellant asserts, however, that Officer Coon's testimony, that appellant was not free to leave once he entered the patrol car, is determinative of the custodial interrogation issue. Not so. An arresting officer's opinion as to whether a person is under arrest is only a *factor* to be considered in determining if an arrest has occurred. It is not the controlling factor. *Hoag v. State*, 728 S.W.2d 375, 378–79 (Tex.Crim.App.1987); *Amores v. State*, 816 S.W.2d 407, 412 (Tex. Crim.App.1987) (referring specifically to *Hoag*). Officer Coon did not threaten appellant, nor did he force appellant to lie and aid in his investigation. Under these circumstances, we cannot find that the statements made by appellant were the product of a custodial interrogation.

Appellant, in opposition to the arrest question, cites to several cases, two of which came from this court. *Amores v. State, supra; Burkes v. State*, 830 S.W.2d 922 (Tex.Crim. App.1991); *Brown v. State*, 826 S.W.2d 725 (Tex.App.—Houston [14th Dist.], 1992 no pet.); *Burkhalter v. State*, 642 S.W.2d 231 (Tex.App.—Houston [14th Dist.] 1992 no pet.). We find these cases simply not on

point because, in the case before us, the appellant voluntarily agreed to accompany the officer to assist him. Contrast this with *Amores*, where the officer blocked the accused's car, ordered him to lie on the ground and threatened to shoot him. *Amores*, 816 S.W.2d at 410. The state, in fact, attempted to distinguish *Amores* from *Hoag, supra*, because the officer in *Hoag*, as here, testified that he believed the defendant was under arrest. *Id.* at 412. The Court of Criminal Appeals rejected that argument, stating:

> "The distinction is without consequence, however, as the officer's opinion is not the controlling factor.
>
> In deciding *Hoag*, we specifically "acknowledge[d] that the question of whether a person is under arrest is not to be determined solely by the opinion of the arresting officer. (citations in opinion), *Amores* at 412."

Similarly, in *Burkes*, the officer commanded the defendant to lie on the ground, rolled him over, and handcuffed him without questioning him. *Burkes*, 830 S.W.2d at 924–925. Likewise, in *Brown*, the officers came at the defendant from both sides, and one unsnapped the hammer strap on his gun and pushed defendant onto the hood of his car. *Brown*, 826 S.W.2d at 727. Clearly, the obtrusive, restraining acts of the officers in these cited cases contrast starkly with this case, where the appellant voluntarily accompanied the officer to assist in the investigation.

We are also at a loss to understand the appellant's supportive reference to our decision in *Burkhalter*. *Burkhalter*, 642 S.W.2d at 231. Under the facts of that case, appellant had been handcuffed and told he was under arrest. Later, he was released for transportation to the hospital where an alcohol blood test was administered, which he contested as being in violation of his constitutional rights. We affirmed his conviction and pointed out that:

> "The mere fact that an officer makes the statement to an accused that he is under arrest is not enough to complete the arrest, *Smith v. State* [153 Tex.Crim. 230], 219 S.W.2d 454 (Tex.Crim.App.1949); cus-

tody and control must be assumed over the party. *Wyatt v. State,* 120 Tex.Crim. 3, 47 S.W.2d 827 (1932). *Burkhalter* at 233–234."

It is clear that whether or not the defendant is under arrest, or in custody, is to be determined based on all of the facts and circumstances surrounding the encounter. *Hoag,* 728 S.W.2d at 378. Here the appellant voluntarily accompanied the officer to assist him in the investigation. He chose to do this, and nothing in the facts suggest that he was compelled to do so. Nor was he compelled to lie to the officer in a patently amateurish way about his identity and other facts. This, again, was his choice, and he should not in our opinion be constitutionally protected from his voluntary acts by placing him under the umbrella of psychological coercion attached to custodial interrogation. We overrule point of error three.

Furthermore, appellant's argument that the subsequent inculpatory nature of his statements precluded their admission is without merit. To so hold would place a prior restraint on all non-custodial questions of suspects, which, presently, are permissible and necessary in the efficient conduct of police investigations. Accordingly, point of error three is overruled.

■ In point of error four, appellant claims the trial court erred by failing to file written findings of fact and conclusions of law as to the voluntariness of the oral statements made by appellant as required by TEX.CODE CRIM.PROC.ANN. art. 38.22, Sec. 6 (Vernon 1979).

We agree with appellant that the requirements of Art. 38.22, Sec. 6 are mandatory, whether or not the defendant objects. *Bonham v. State,* 644 S.W.2d 5, 8 (Tex.Crim.App. 1983). However, this section only applies to custodial interrogations. No findings of fact or conclusions of law are required where the oral statements did not stem from custodial interrogation. Voluntariness is not an issue if the speaker was not in custody when the statement was made. *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). As previously discussed in response to appellant's third point of error, appellant was not in custody at the time he gave Officer Coon a false identity and led him to the alleged suspect's home. Point of error four is overruled.

■ In appellant's fifth point of error he claims the trial court committed reversible error in denying him the opportunity to present a videotape of the lineup in which appellant participated and was identified. He claims he is entitled to this in order to cross-examine the complainant as to the sizes, heights, and clothing worn by those individuals who participated in the lineup. Appellant contends the complainant had trouble recalling any characteristics of the other participants in the lineup, and he wanted to discredit her identification of appellant by use of the videotape. The trial court also denied appellant the opportunity to perfect a bill on the evidence.

While we generally find it imprudent to deny a party the chance to make a bill, we fail to see the harm in this case. In conducting a harmful error analysis, we, as the reviewing court, must reverse a case unless we determine beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. TEX.R.APP.P. 81(b)(2). In this case, Ms. Pinson unequivocally identified appellant as her assailant, both at the lineup and at trial. She repeatedly testified that she harbored no doubts that appellant was the individual who held her at knifepoint, stole her truck, and disrobed and fondled her. In light of this testimony, we fail to see the relevance of whether or not she could recall the shapes, sizes and clothing of the other lineup participants. She clearly did not notice them because she focused solely on appellant, whom she recognized as her attacker. Indeed, is that not the purpose of a lineup—for the victim to see if she can independently identify her attacker? Her testimony was clear and unequivocal that appellant was the assailant. She should not at trial be held to the standard of having to remember all of the other participants in the lineup as appellant impliedly suggests. We, therefore, have no trouble finding beyond a reasonable doubt that the denial of the cross-examination of Ms. Pinson through use of the videotape had

no contribution to appellant's conviction or punishment. Point of error five is overruled.

■ Points of error six and seven concern *Batson* issues. Appellant contends the trial court improperly permitted the state to utilize a peremptory strike to exclude minority veniremember Andrew Jackson from jury service in violation of TEX.CODE CRIM.PROC. ANN. art. 35.261 and the holding set forth in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

At the outset we note that two African-Americans served as jurors in this case. Nonetheless, appellant made a *Batson* challenge regarding the striking of Jackson before the jury was sworn. The trial court then required the prosecutor to provide a racially neutral explanation of why she exercised a strike against Jackson. The prosecutor responded by stating that upon being questioned, veniremember Jackson related a distinct hesitancy in returning a guilty verdict based on only the complainant's testimony. He stated that even if he believed her story, he would probably require more evidence to find appellant guilty. Apparently, Ms. Pinson was the only direct witness to the crime, and therefore, the state was not comfortable with a juror who expressed concern regarding the quantity of evidence, regardless of how damning it might be.

Appellant argues that this explanation is unacceptable because two other white jurors expressed similar concerns. However, after reviewing the statement of facts we reach a different conclusion. The two white jurors in question merely stated that they would require the witness to provide more details than just that the crime happened. This is something entirely different. The two white veniremembers did not say that they could not rely only on one witness, but only that one witness would have to provide specific details. Disparate treatment cannot automatically be imputed where one of the state's reasons for striking a juror would technically apply to another potential juror whom the state found acceptable. *Cantu v. State,* 842 S.W.2d 667 (Tex.Crim.App.1992). We do not find that the trial court abused its discretion in allowing the state to exercise one of her

strikes against Mr. Jackson. Points of error six and seven are overruled.

■ Finally, in points of error eight, nine, and ten, appellant claims the trial court permitted the prosecutor to indulge in improper jury argument. Specifically, appellant complains of the following statements by the attorney for the state:

Until you experience the terror of being held at knifepoint ... you cannot substitute your own recognition abilities of that of a victim ...
... The defense would like to coerce you through fear of a misidentification.
... I ask you to believe the victims just as you would believe yourselves or your neighbors or anybody else if something horrible like this happened to them ...

Appellant argues that these statements impermissibly asked the jurors to place themselves in the victim's shoes, and that the state attempted to strike at the appellant over his counsel's shoulders by accusing counsel of attempting to "coerce" the jury through the fear of misidentification. We find these points of error without merit.

Proper jury argument may consist of a summary of the evidence, a reasonable deduction from the evidence, response to opposing argument, or a plea for law enforcement. *Gaddis v. State,* 753 S.W.2d 396, 398 (Tex.Crim.App.1988).

With regard to appellant's claim that the prosecutor asked the jurors to put themselves in the victim's shoes, we disagree. The prosecutor merely asked the panel to rely upon their common sense, and pointed out that absent a similar experience, they could not possibly substitute their calm recognition abilities for her's. While we realize that the common sense of jurors is sometimes viewed with alarm in criminal appeals, we still have full confidence in it, if jurors are allowed to fully exercise it. It serves to keep criminal trials in reasonable touch with the real world of everyday people, whose presence we compel to decide such cases. While in hindsight we might conclude that the argument could have been more precisely phrased, we find that when viewed in context, it by no means rises to the level of

reversible error. Furthermore, the horror and terror proclaimed by the prosecutor are certainly reasonable deductions from the evidence, in view of the nature of the crime of aggravated robbery that she experienced.

 With respect to the argument that defense counsel was attempting to "coerce" the jury through fear of misidentification, we simply point out that a great deal of appellant's defense was based upon the premise of Ms. Pinson's possible error in identifying appellant. Therefore, this argument was merely a response to appellant's own admonitions. Improper jury argument does not constitute reversible error unless, in light of the entire record, the argument is extreme, manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused. *McKay v. State,* 707 S.W.2d 23, 26 (Tex.Crim.App.1985), *cert. denied,* 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986). We find none of these instances applicable in the present case. Points of error eight, nine, and ten are, therefore, overruled.

The judgment of the trial court is AFFIRMED.