**Gerald Eugene LAND, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–96–00254–CR.

Court of Appeals of Texas, Houston (1st Dist.).

March 27, 1997.

Brian W. Wice, Houston, for Appellant.

Julie Klibert, Houston, for Appellee.

Before TAFT, MIRABAL and WILSON, JJ.

## OPINION

TAFT, Justice.

Appellant, Gerald Eugene Land, was charged in two paragraphs with aggravated assault by causing bodily injury with a deadly weapon; one paragraph alleged an automobile as the deadly weapon, and the other alleged a tire tool. The offense was enhanced by allegations of two prior felony convictions for aggravated assault and robbery. In a general verdict, a jury found appellant guilty and, having found the enhancement allegations true, assessed punishment at 60 years in prison. We address whether the trial court erred in: (1) not submitting unrequested jury instructions on self-defense and voluntariness of his oral statement; (2) not filing written findings of fact and conclusions of law on the voluntariness of his oral statement; and (3) admitting his oral statement in evidence. We also decide whether trial counsel was ineffective for failing to request jury instructions on self-defense and voluntariness of appellant's statement. We affirm.

## Facts

Donald Bruggeman had been staying with Donnie May for several weeks. Bruggeman was helping May move to another home which was not ready yet. There were still a few things at the old house and Bruggeman decided to stay there, while May stayed at a nearby motel. Early the following morning, Bruggeman was awakened by a loud crash. He looked outside and saw a minivan that he recognized as belonging to appellant's girlfriend. Bruggeman observed an unknown male sitting in the front passenger's seat. Bruggeman entered the garage and saw appellant removing the tires from a truck inside the garage. After appellant said he had May's permission to take the tires, Bruggeman told appellant he was going to call May to verify.

From a pay phone across the street, Bruggeman saw appellant drive away in the minivan. Bruggeman was unable to reach May by telephone and he began walking to the motel where May was staying. On the way, Bruggeman saw the minivan driven by appellant approaching. Appellant drove over the curb of the feeder road where Bruggeman was walking and struck him head-on with the middle of the front bumper. The impact knocked Bruggeman over the top of the minivan. He landed in the feeder road. Appellant put the minivan in reverse and again struck Bruggeman, nearly severing his little finger, as he tried to roll out of the way.

Bruggeman managed to get up and run into the lobby of the nearby motel. Appellant got out of the minivan and chased Bruggeman into the motel lobby with a tire tool. Appellant struck Bruggeman in the head with the tire tool, knocking him unconscious. Bruggeman woke up in the hospital. His little finger had to be amputated and the injuries to his skull and sinuses required surgery. Bruggeman has a scar on his forehead in the shape of a lug wrench.

Several months later, Detective Norman Welsh picked up appellant for questioning. Welsh told appellant his rights. Appellant

denied having anything to do with the incident, even after being informed Bruggeman had picked his picture from a photo spread. Appellant finally admitted, however, that he had been at the scene on the night of the offense. On the advice of an assistant district attorney, Welsh arrested appellant. While being transported to the inmate processing center in handcuffs in the back of Detective Welsh's car, appellant said he did it because Bruggeman pulled a knife on him; he also said he had wanted to turn himself in for a long time.

### Omission of Unrequested Self–Defense Charge

In point of error one, appellant contends the trial court erred by failing to submit a jury charge on self-defense. Appellant acknowledges he did not request a self-defense instruction, but argues that where the evidence raised the issue, the trial court erred in not submitting it. Appellant claims harm resulted because he was deprived of the only defensive theory available, and the harm was aggravated by the prosecutor's argument urging the jury not to consider the law of self-defense because it was not included in the jury charge.

### A. Standard of Review

Article 36.14 of the Code of Criminal Procedure provides, in pertinent part:

> ... the trial judge shall, before the argument begins, deliver to the jury ... a written charge distinctly setting forth the law applicable to the case.... Before said charge is read to the jury, the defendant or his counsel shall have a reasonable time to examine the same and he shall present his objections thereto in writing, distinctly specifying each ground of objection. Said objections may embody errors claimed to have been committed in the charge, as well as errors claimed to have been committed by omissions therefrom or in failing to charge upon issues arising from the facts, and in no event shall it be necessary for the defendant or his counsel to present special requested charges to preserve or maintain any error assigned to the charge, as herein provided. The requirement that

the objections to the court's charge be in writing will be complied with if the objections are dictated to the court reporter in the presence of the court and the state's counsel, before the reading of the court's charge to the jury. Compliance with the provisions of this Article is all that is necessary to preserve, for review, the exceptions and objections presented to the charge and any amendment or modification thereof....

TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon Supp.1997).

Article 36.19 of the Code of Criminal Procedure provides:

> Whenever it appears by the record in any criminal action upon appeal that any requirement of Articles 36.14, 36.15, 36.16, 36.17 and 36.18 has been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of the defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial. All objections to the charge and to the refusal of special charges shall be made at the time of the trial.

TEX.CODE CRIM. PROC. ANN. art. 36.19 (Vernon 1981).

In *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim.App.1984), the Court of Criminal Appeals interpreted article 36.19 regarding unobjected-to jury charge error as follows:

> [I]f no proper objection was made at trial and the accused must claim that the error was "fundamental," he will obtain a reversal only if the error is so egregious and created such harm that he "has not had a fair and impartial trial"—in short "egregious harm."
>
> ... the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.

*Id.* at 171.

Appellant assumes that the standard of reviewing error in the jury charge established in *Almanza* applies to omissions of

unrequested jury instructions. He relies upon this Court's opinion applying *Almanza* to this situation in *Posey v. State*, 916 S.W.2d 88 (Tex.App.—Houston [1st Dist.] 1996, pet. granted). On the other hand, the State relies upon pre-*Almanza* cases,[1] and this Court's opinion applying them, to argue waiver of any error in omitting an unrequested jury instruction. *See Marlow v. State*, 886 S.W.2d 314, 319 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd).

■ It does not appear that any case has squarely addressed the conflict between the pre-*Almanza* cases holding any error in the omission of unrequested instructions is waived and post-*Almanza* cases engaging in a determination of whether the error is egregious. However, in *Saunders v. State*, 817 S.W.2d 688, 690 (Tex.Crim.App.1991), the Court of Criminal Appeals stated that the holding of *Almanza* applied to error by the trial court in not charging the jury concerning law applicable to the case. The court in *Saunders* proceeded to apply an *Almanza* analysis to the omission of an unrequested jury instruction. *Saunders*, 817 S.W.2d at 692. The court's holding in *Saunders* clearly depended on the application of *Almanza* to omissions of unrequested jury instructions. Therefore, we are bound to follow the example of the Court of Criminal Appeals and apply *Almanza* in this case.

■ Where the evidence fairly raises the issue of self-defense, the defendant is entitled to have this defensive issue submitted to the jury. *Riddle v. State*, 888 S.W.2d 1, 6 (Tex. Crim.App.1994). This is true whether the evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the evidence. *Hayes v. State*, 728 S.W.2d 804, 807 (Tex.Crim.App.1987). An instruction on self-defense is not required, however, if the evidence, viewed in the light most favorable to the defendant, does not establish a case of self-defense. *Dyson v. State*, 672 S.W.2d 460, 463 (Tex.Crim.App.1984).

## B. Error

The evidence which appellant argues entitled him to a charge on self-defense is the testimony of Detective Norman Welsh that appellant admitted he did it because the complainant pulled a knife on him. The State argues this evidence did not even raise the issue of self-defense because there was no showing when Bruggeman pulled a knife on appellant in relation to the alleged offense; the knife-pulling incident may have occurred on some previous occasion.

Appellant directs us to several cases which he claims control resolution of whether the evidence in this case was sufficient to support submission of a jury charge on self-defense. *See Booth v. State*, 679 S.W.2d 498, 500 (Tex. Crim.App.1984); *Smith v. State*, 676 S.W.2d 584, 587 (Tex.Crim.App.1984); *Misner v. State*, 610 S.W.2d 502, 504 (Tex.Crim.App. 1981); *Rodriquez v. State*, 544 S.W.2d 382, 384 (Tex.Crim.App.1976); *Reich–Bacot v. State*, 914 S.W.2d 666, 668 (Tex.App.—Texarkana 1996), *vacated at* 936 S.W.2d 961 (Tex. Crim.App.1996). We have examined each of these cases, all of which contain facts clearly showing the contemporaneous nature of the acts of self-defense and the provocation for those acts. We conclude these cases do not control here because no evidence establishes the temporal proximity of Bruggeman's knife-pulling and appellant's assaults. Even considering appellant's statement in the light most favorable to, and making every inference in favor of, appellant's position that self-defense was raised, we have difficulty holding self-defense was raised under these facts. Nevertheless, we decline to decide the issue and choose instead to assume sufficient evidence to support the submission of a self-defense instruction.

## C. Egregious Harm

■ *Almanza* requires that the actual degree of harm be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the whole record. 686 S.W.2d at 171.

---

1. *White v. State*, 495 S.W.2d 903, 904 (Tex.Crim. App.1973); *Elmo v. State*, 476 S.W.2d 296, 297 (Tex.Crim.App.1972); *Rogers v. State*, 420 S.W.2d 714, 715 (Tex.Crim.App.1967).

Obviously, the court intended for *the error* to be analyzed in light of the various factors set out in *Almanza*. The nature of the error itself is the logical first step in such an analysis. Assuming the trial court erred in this case by not submitting an instruction on self-defense in the jury charge, the nature of the error is particularly problematical. As the State points out, in order for the trial court to avoid committing the error, it would have been necessary to inject itself into an area of defense trial strategy.[2] The State also points out that the error here is clearly distinguishable from most "fundamental" error in jury charge cases, such as *Almanza,* in which the charge contained actual error within it. Here, the error was omitting an additional instruction.

In regard to the development of the evidence and the contested issues at trial, contrary to appellant's position on appeal, self-defense was not appellant's sole defensive theory at trial. Indeed, appellant did not rely on self-defense at all. The record reflects that appellant's defensive theory was that he did not commit the offense altogether. While the State questioned prospective jurors about self-defense during jury selection, defense counsel did not mention it. Neither side made an opening statement. The argument of defense counsel at the close of the guilt/innocence stage did not mention self-defense, but only attempted to downplay the importance and credibility of the officer's testimony that appellant had made an admission.

█ Under these conditions, the omission of self-defense from the jury charge did not harm appellant at all, much less egregiously. It could well be argued that the submission of self-defense in this case would have harmed appellant. Had the trial court asked whether defense counsel wanted a self-defense instruction, it appears that competent counsel would have declined. Had the trial court insisted on instructing the jury, pursuant to article 36.14, on self-defense based on the defense having been raised by the evidence, competent counsel likely would have objected.

Having reviewed the totality of the circumstances to determine the impact of the asserted error, we conclude appellant has utterly failed to show egregious harm from the omission of a self-defense instruction. Accordingly, we overrule point of error one.

### Omitted Voluntariness of Confession Instruction

In point of error two, appellant argues the trial court erred in failing to submit a jury charge on the voluntariness of his oral statement. Although appellant did not request an instruction on the voluntariness of his oral statement, he argues that the trial court was required by article 38.22 of the Code of Criminal Procedure to give an instruction when an issue of the voluntariness of a defendant's statement is raised. The State argues that: (1) appellant waived any error by failing to request the charge; (2) failure to give the instruction was not fundamental error; and (3) the evidence did not raise the issue of voluntariness.

Detective Welsh spoke with appellant by telephone on August 3, 1994. The next day, Welsh picked up appellant and took him to his office at the Sheriff's Department to "find out [appellant's] side of what happened." Detective Welsh gave appellant his warnings prior to the interview. Although it is not clear if appellant was told he was not under arrest, Welsh testified that in fact he was not. Appellant told Welsh that he had nothing to do with the assault, and stuck to his claim of innocence even after being told that the complainant had picked his picture out of a photo spread. Eventually, appellant admitted that he was at the scene the night of the offense. After consulting with an assistant district attorney, Welsh handcuffed appellant, placed him in the back of a patrol car, and transported him to the custodial processing facility. Welsh did not re-read appellant's warnings after he was formally arrested. While driving to the location where appellant was to be processed, appel-

---

**2.** Self-defense is a justification for having committed the alleged conduct. Thus, self-defense would have been inconsistent with appellant's strategy in this case, which was to deny having committed the alleged conduct.

lant told Welsh he did it because the complainant pulled a knife on him. Appellant also said he had wanted to turn himself in for a long time. Detective Welsh had not asked appellant any questions eliciting appellant's statements.

The trial court did not enter written findings of fact and conclusions of law regarding the voluntariness of appellant's statements. However, at the conclusion of the hearing, the trial court did state on the record that the statements were made voluntarily, were not made in response to direct questioning, and were not made in response to statements designed to elicit an incriminating response. Appellant does not challenge the trial court's finding that his oral statement did not stem from custodial interrogation.

Article 38.22, section five of the Code of Criminal Procedure states, "Nothing in this article precludes the admission of ... a statement that does not stem from custodial interrogation ..." TEX.CODE CRIM. PROC. ANN. art. 38.22, § 5 (Vernon 1979). Accordingly, courts have held that the requirements of sections six and seven regarding instructing the jury on the voluntariness of a statement do not apply where it did not stem from custodial interrogation. *Garza v. State*, 915 S.W.2d 204, 210 (Tex.App.—Corpus Christi 1996, pet. ref'd); *White v. State*, 874 S.W.2d 229, 236 (Tex.App.—Houston [14th Dist.] 1994), *pet. dism'd*, 890 S.W.2d 69 (Tex.Crim. App.1994); *Inman v. State*, 683 S.W.2d 40, 42 (Tex.App.—Eastland 1984, no pet.).

■ We agree with the holding of these courts that the article 38.22 requirements, such as submitting voluntariness issues to the jury, attaching to statements resulting from custodial interrogation do not apply to those which are admissible under section five because they do not stem from custodial interrogation. Accordingly, we overrule point of error two.

**3.** In Texas, we have a statute requiring that an accused be informed of his rights to remain silent, to have a lawyer present to advise during questioning, and to terminate the interview at any time. TEX.CODE CRIM. PROC. ANN. art. 38.22 § 2 (Vernon 1979). These rights are slightly different from, and more protective to the criminal

### No Findings Regarding Voluntariness

In point of error three, appellant argues the trial court erred by failing to file written findings of fact and conclusions of law as to the voluntariness of the oral statement. In that regard, appellant requests the case be abated so that the trial court may properly enter its findings of fact and conclusions of law on the disputed issues surrounding the admission of appellant's oral statement.

■ For the same reasons stated in our analysis of point two, the requirement to make findings regarding voluntariness does not apply to appellant's oral statement because it did not stem from custodial interrogation. Therefore, we overrule point of error three.

### Rights Not Re–Read Upon Arrest

In point of error four, appellant contends the trial court erred in admitting appellant's oral statement to Detective Welsh on the way to jail. Appellant argues the oral statement was inadmissible because appellant was not re-read his *Miranda* rights [3] after he was formally arrested. Appellant acknowledges Welsh's explanation for not re-reading appellant's rights was because he was not taking a statement from him. Appellant claims this is at odds with Welsh's subjective intent to obtain a confession.

■ For the same reasons stated in our analysis of point two, the requirement to read an accused his legal rights does not apply to appellant's oral statement because it did not stem from custodial interrogation. Therefore, we overrule point of error four.

### Ineffective Assistance of Counsel

In points of error five and six, appellant argues his trial counsel was ineffective because (1) he failed to request a jury instruction on self-defense and (2) he failed to request a jury instruction on the voluntariness of the oral statement.

defendant than, those required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Thus, it is inaccurate to call the rights that should be read to a criminal defendant in Texas *"Miranda* rights." We understand appellant to mean his "article 38.22 rights."

The test for evaluating claims of ineffective assistance of counsel during the guilt-innocence phase of a criminal trial is whether an accused was denied reasonably effective assistance of counsel and whether counsel's errors were so serious as to deprive him of a fair trial, that is, one whose result is reliable. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Ex parte Menchaca,* 854 S.W.2d 128, 131 (Tex.Crim.App.1993).

Because we have determined in point of error one that trial counsel's having not requested a charge on self-defense was likely a matter of trial strategy which resulted in no harm to appellant, we overrule point of error five. Because we have determined in point of error two that appellant was not entitled to a jury instruction regarding the voluntariness of a statement not stemming from custodial interrogation, we overrule point of error six.

## Conclusion

We affirm the trial court's judgment.

TAFT, Justice, concurs.

TAFT, Justice, concurring.

I take the uncommon, but not unprecedented, step of concurring with one's own opinion. I concur that the majority opinion reaches the correct result regarding allegations of trial court error in not submitting unrequested jury instructions. I write to urge the Court of Criminal Appeals to reconsider its decision in *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App. 1984), to determine: (1) whether it correctly interpreted article 36.19 of the Code of Criminal Procedure; and (2) whether *Almanza* applies to omissions of unrequested jury instructions.

## Importance of *Almanza*

*Almanza* is monumental for halting what Judge Clinton called the "modern trend of the Court first to label certain errors 'funda-

mental' then automatically reverse convictions without regard to the nature and harm of the error in the case." *Id.* at 172–73. While unacknowledged in any of the *Almanza* opinions, the court had strayed far from the statutory standard for reviewing error in the jury charge:

### Art. 36.19 Review of charge on appeal

Whenever it appears by the record in any criminal action upon appeal that any requirement of Articles 36.14, 36.15, 36.16, 36.17 and 36.18 has been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial. All objections to the charge and to the refusal of special charges shall be made at the time of the trial.

TEX. CODE CRIM. PROC. ANN. art. 36.19 (Vernon 1981). Whatever else can be said about *Almanza,*[1] it accomplished no small service to the Texas criminal jurisprudence by restoring, to some extent, an adherence to the statutory standard of review.

I suggest it was the necessary first step to an ultimate restoration of the clear legislative intent expressed in the plain language of the statute. A comparison of the majority opinion with the concurring/dissenting opinion in *Almanza* provides a stark contrast between antithetical approaches. The majority opinion searched everywhere, but the language of the statute itself, for support of a legislative establishment of the doctrine of fundamental error. The concurring/dissenting opinion simply looked at the statutory language itself to conclude fundamental error was a creation of the judiciary. The reason for the development of the doctrine of fundamental error in the jury charge is obvious from the second sentence of article 36.19 that clearly requires a trial objection in order to obtain appellate review. The fundamental error doctrine arose to address jury charge error, to which no objection was made, that "affected the

---

1. For example, Judge Teague dubbed it *"Almanza* the Terrible" and "monster child" in his colorful concurring opinion in *Kucha v. State,* 686 S.W.2d 154, 156 (Tex.Crim.App. 1985) which began: *"Today we witness another startling valid* legal reason why this Court should have aborted, rather than to have given birth to, the monster child now known in our legal circles as *'Almanza* the Terrible.'"

foundation of a conviction's validity." *Id.* at 176 (Onion, P.J., concurring in part and dissenting in part).

The reason it is now time to reexamine *Almanza*, and the doctrine of fundamental error in general, is that with the advent and prolific development of appellate review of points of error based on ineffective assistance of counsel, there is no longer the need there once was for the doctrine of fundamental error. Despite the admonition of *Ingham v. State*, 679 S.W.2d 503, 507 (Tex.Crim.App. 1984), that error waived by lack of trial objection would not automatically translate into grounds for relief based on ineffective assistance of counsel, ineffective assistance claims certainly have eliminated the need for trial objections in order to obtain review of error on direct appeal.

Any error that an appellate court formerly felt constrained to address as fundamental, or in the interest of justice, due to lack of preservation at trial, is now reviewable via ineffective assistance of counsel.[2] Isn't it time we return to the plain and simple language of the legislative standard for reviewing error in a jury charge?

### Does *Almanza* Apply to Unrequested Omissions?

Even if the Court of Criminal Appeals is unwilling to consider a complete return to the statutory language, I urge the court to address the issue of whether *Almanza* applies to unrequested omissions. Based on its facts, and its express holding, *Almanza* applies to error *in* the charge. *Id.* at 159, 174. There is a difference between a charge that is erroneous on its face, and a charge which, though correct on its face, may not contain every instruction on law conceivably applica-ble to the case. Indeed, the vast majority of cases[3] involving fundamental jury charge error have been cases where the error was in the charge. *See Cumbie v. State*, 578 S.W.2d 732, 733–35 (Tex.Crim.App.1979) (although overruled in *Almanza*, it set forth the most thorough categorical analysis of fundamental error in the jury charge).[4]

The majority opinion follows the example of *Saunders v. State*, 817 S.W.2d 688 (Tex. Crim.App. 1991), by applying *Almanza* to omissions of unrequested charges. *Saunders* relied upon that part of article 36.19 which expressly applies to any error in article 36.14, including the duty of the trial court to deliver to the jury a written charge distinctly setting forth the law applicable to the case. TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon Supp. 1997), art. 36.19 (Vernon 1981). What this overlooks is the very strongly worded legislative intent in the statutory provisions that there be a request or objection at trial before one is able to complain on appeal of error in the jury charge. We have examined that clear language in article 36.19 above ("All objections to the charge and to the refusal of special charges shall be made at the time of trial."). The pertinent language of article 36.14 is:

> Before said charge is read to the jury, the defendant or his counsel shall have a reasonable time to examine the same and he shall present his objections thereto in writing, distinctly specifying each ground of objection. Said objection may embody errors claimed to have been committed in the charge, *as well as errors claimed to have been committed by omissions therefrom or in failing to charge upon issues arising from the facts*, and in no event shall it be necessary for the defendant or his coun-

2. Of course, there will be some cases where ineffective assistance of counsel is not raised on direct appeal, but fundamental error in the jury charge is. *See Posey v. State*, 916 S.W.2d 88, 91 n.4 (Tex.App.—Houston [1st Dist.] 1996, pet. granted). The elimination of fundamental error in those cases would result in restricting such as appellant to pursuing relief by post-conviction writ of habeas corpus.

3. Perhaps all pre-*Almanza* cases in which fundamental jury charge error was found involved errors of commission within the charge rather than errors of omission. Even since *Almanza*, there are relatively few cases addressing fundamental jury charge errors of omission.

4. I recognize that the very first category of fundamental error examined in *Cumbie* was an *omission* of an allegation in the indictment required to be proved. *Id.* at 733. Such a so-called error of omission is actually an error of commission for affirmatively submitting an instruction with an element missing. This is different from omitting an entire instruction, which is the error of omission at issue here.

sel to present special charges to preserve or maintain any error assigned to the charge, as herein provided.

TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon Supp. 1997) (emphasis added). The plain language clearly shows a legislative intent that errors of omission, as well as errors of commission, be raised in the trial court.

What *Saunders* did not address was prior cases from the court holding that a request or trial objection was necessary for appellate review. *See White v. State*, 495 S.W.2d 903, 904 (Tex.Crim.App. 1973); *Elmo v. State*, 476 S.W.2d 296, 297 (Tex.Crim.App. 1972); *Rogers v. State*, 420 S.W.2d 714, 715 (Tex. Crim.App. 1967). These cases have not yet been expressly overruled. The potential for conflict is being realized. *See Marlow v. State*, 886 S.W.2d 314, 319 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd) (applying *White* to hold error in omitting unrequested charge waived); *cf. Posey*, 916 S.W.2d at 90–91 (applying *Almanza* to hold error in omitting unrequested charge is fundamental).

There are also practical and policy reasons to hold *Almanza* does not apply to omissions of unrequested jury instructions. As the majority opinion points out, requiring the trial court to submit unrequested jury instructions causes the trial court to leave its position of neutrality and inject itself into the arena of the parties' trial strategy.

### Conclusion

For these reasons, I urge the Court of Criminal Appeals to revisit its interpretation of article 36.19 in *Almanza* and complete the job of bringing the jurisprudence back to the statutory standard of reviewing jury charge error.