Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



★ ★ ★ ★  ★ ★ ★

## MEMORANDUM OPINION

No. 04-11-00864-CR

Dylan **DOMINGUEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2010CR7524A
Honorable Maria Teresa Herr, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:        Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Marialyn Barnard, Justice

Delivered and Filed:  October 10, 2012

AFFIRMED

After entering a plea of guilty to aggravated robbery, appellant Dylan Dominguez was sentenced by the trial court to twenty-five years confinement in the Texas Department of Criminal Justice – Institutional Division. On appeal, Dominguez argues the trial court erred in overruling his motion to suppress because Dominguez's unwarned statement was made during a custodial interrogation.[1] We affirm the trial court's judgment.

---

[1] Dominguez entered a plea of guilty and was sentenced in accordance with a plea bargain agreement with the State, which would generally preclude his right to appeal. *See* TEX. R. APP. P. 25.2(a)(2). However, Dominguez has the

**BACKGROUND**

On April 2, 2002, Domingo Arrendondo-Mendez ("Arrendondo") spent the day helping Leticia Mora at a garage sale. That evening, Arrendondo returned to Mora's residence around 9:00 p.m., sitting outside in his vehicle. Mora checked on him at 9:30 p.m. and again at 12:30 a.m., telling Arrendondo to go home. At approximately 2:00 a.m., Mora heard someone talking outside her house. She saw an individual, later identified as Dominguez, walking back and forth down the street. Mora stated Dominguez was watching two other male individuals, later identified as John "Fat Boy" Perez and Richard Hernandez, who were standing beside Arrendondo's vehicle. To Mora, it appeared as if one person was holding Arrendondo, while another was hitting him. Mora flicked the lights in an attempt to scare the men, and all three ran off. Arrendondo got out of his vehicle, told Mora he had been robbed, and asked her to call the police. Emergency personnel arrived and transported Arrendondo to the hospital where he died approximately three weeks later. The Bexar County Medical Examiner reported Arrendondo suffered twelve stab wounds, localized mainly to the left half of his torso.

For several years, the case remained unsolved. However, Hernandez eventually came forward and admitted he and Perez were present when Arrendondo was stabbed. When Perez was questioned, he admitted stabbing Arrendondo and implicated both Hernandez and Dominguez. During Dominguez's interview with San Antonio Police Detective Elizabeth Ann Greiner, he admitted acting as a lookout when Arrendondo was stabbed. Dominguez insisted Perez only wanted to "jack him." Dominguez was only supposed to be a lookout, and Perez was only supposed to take Arrendondo's money. Dominguez further admitted he went up to the car after he heard the man scream, but then "bolted" from the scene.

---

right to appeal because he filed a written pretrial motion to suppress that was ruled on before trial. *See id*. R. 25.2(a)(2)(A).

After his motion to suppress regarding his statement to officers was denied, Dominguez entered a plea of guilty and was sentenced to twenty-five years confinement. This appeal ensued.

## MOTION TO SUPPRESS

On January 20, 2010, Dominguez was at the probation department for a scheduled meeting when Officer Greg DeHoyos and Detective Mike DeLeon asked him if he was willing to talk to Detective Greiner. They told Dominguez he was not under arrest and Detective Greiner simply had some questions. Dominguez agreed to speak to Detective Greiner and was taken by Officer DeHoyos and Detective DeLeon to the San Antonio Police Department – Homicide Department.

The motion to suppress was heard on June 30, 2011. Detective Greiner, the only witness called during the hearing, testified that when she first met Dominguez, she again told him he was not under arrest and asked if he would be willing to speak to her. She also reiterated, and confirmed, Dominguez understood that he was not under arrest. During their conversation, Dominguez admitted to being present when Arrendondo was killed, but insisted his only role was as a lookout and no one was supposed to be killed.

The entire interview lasted less than an hour. Detective Greiner described Dominguez as cooperative and relaxed. She testified Dominguez spoke to her freely and voluntarily. When the interview was completed, Dominguez used the phone on Detective Greiner's desk and Detective Greiner then drove him to a family member's residence. The trial court took the matter under advisement and the hearing was reset for a later date. On July 28, 2012, the trial court denied the motion to suppress and made the following findings of fact and conclusions of law: (1) Dominguez was not under arrest; (2) there was no coercion; (3) Dominguez was not handcuffed;

(4) Dominguez was free to come and go; (5) Dominguez was not detained after giving the statement; and (6) Dominguez voluntarily gave the statement.

### Standard of Review

A trial court's ruling on a motion to suppress is reviewed for an abuse of discretion. *Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005); *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). An appellate court may not make any factual determinations. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). To the contrary, the trial court is the sole trier of fact and makes all determinations of credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007) (citing *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999)). A trial court's custodial determination is a "mixed question of law and fact." *Herrera v. State*, 241 S.W.3d 520, 526-27 (Tex. Crim. App. 2007) (quoting *Thompson v. Keohane*, 516 U.S. 99, 112–13 (1995)). Appellate courts give almost complete deference in determining the facts, but review the record to determine if the trial court's rulings are supported by the record. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). With regard to the legal rulings, the appellate court conducts a de novo review unless the factual determinations are dispositive of the legal rulings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

### Custodial Interrogation

Custodial interrogation is any type of interrogation initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant manner. *Miranda*, 384 U.S. at 444. If the interrogation does not occur in an accusatorial or custodial stage, a person's Fifth Amendment rights have not yet come into play, and the

voluntariness in waiving those rights is not implicated. *Melton v. State*, 790 S.W.2d 322, 326 (Tex. Crim. App. 1990). Voluntariness is an issue only if the confession was obtained while the speaker was in custody. *See White v. State*, 874 S.W.2d 229, 236 (Tex. App.—Houston [14th Dist.]), *pet. dism'd,* 890 S.W.2d 69 (Tex. Crim. App. 1994) (mem op.). *Miranda* and Article 38.22 apply only to statements made as a result of custodial interrogation. *Hernandez v. State*, 107 S.W.3d 41, 47 (Tex. App.—San Antonio 2003, pet. ref'd); *Dowthitt v. State*, 931 S.W.2d 244, 263 (Tex. Crim. App. 1996).

In *Martinez v. State*, this court held that a two-step analysis is used to determine whether an individual is in custody. 131 S.W.3d 22, 32 (Tex. App.—San Antonio 2003, no pet.). First, we examine all the circumstances surrounding the interrogation to determine whether there was a formal arrest or restraint of freedom of movement to the degree associated with a formal arrest. *Id.* (citing *Stansbury v. California*, 511 U.S. 318, 322 (1994)). In this step, we focus on the objective circumstances of the interrogation rather than the subjective views of the interrogating officer or the individual being questioned. *Martinez*, 131 S.W.3d at 32 (citing *Stansbury*, 511 U.S. 323). Second, in light of those circumstances, we determine whether a reasonable person would have felt free to terminate the interrogation and leave. *Martinez*, 131 S.W.3d at 32 (citing *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)).

Being the focus of a criminal investigation does not amount to being in custody. *Martinez*, 131 S.W.3d at 32 (citing *Meek v. State*, 790 S.W.2d 618, 620 (Tex.Crim.App.1990)). So long as the circumstances show that a person is acting only upon the invitation, request, or even urging of law enforcement, and there are no threats, either express or implied, that he will be taken forcibly, the accompaniment is voluntary, and such person is not in custody. *Martinez*, 131 S.W.3d at 32; *Anderson v. State*, 932 S.W.2d 502, 505 (Tex. Crim. App. 1996).

Furthermore, neither becoming the focus of the investigation nor being questioned at the police station, without more, necessarily equates to custody for purposes of determining the voluntariness of a statement. *Martinez*, 131 S.W.3d at 32; *Meek v. State*, 790 S.W.2d 618, 621 (Tex. Crim. App. 1990).

## *Analysis*

Here, the trial court not only heard the testimony of Detective Greiner, but was also able to see the entire interview between Detective Greiner and Dominguez. All parties agree Dominguez was not under arrest at the time of the interview. Thus, the question is whether a reasonable person would have felt he was free to leave. *Miranda*, 384 U.S. at 254; *Martinez*, 131 S.W.3d at 32. A review of the video shows Dominguez exhibiting behavior consistent with a cooperative individual, willing to take responsibility for his actions. Not only was Dominguez informed that he was not under arrest, but he was specifically told that regardless of what happened during the interview, he would be going home. *See Garza v. State*, 34 S.W.3d 591, 597 (Tex. App.—San Antonio 2000, pet. ref'd). More specifically, Detective Greiner told Dominguez several times that when the interview was completed, she would take him wherever he wanted. As promised, when the interview was over, Detective Greiner drove Dominguez to his sister's house. *Id*.

None of the officers, specifically Detective Greiner, exerted excessive coercion over Dominguez. *Joseph*, 309 S.W.3d at 25; *Martinez*, 131 S.W.3d at 32. To the contrary, the video shows Detective Greiner was polite, provided answers to Dominguez's questions, explained what information she already had with regard to the murder, and even promised Dominguez that she would not relay any information to his probation officer or call his place of employment.

Dominguez argues the objective observer would not necessarily believe Dominguez would be allowed to leave after the interview. *See Martinez*, 131 S.W.3d at 32; *see also Dowthitt*, 931 S.W.2d at 254. We disagree. At no point during the interview or transport was Dominguez handcuffed or restrained in any manner. Dominguez was free to leave the secure area, he left the secure area unaccompanied, and Dominguez chose to return for further conversations with Detective Greiner. On several occasions, Detective Greiner told Dominguez she was not going to seek a warrant at that time. In fact, when Dominguez told her he was working on his GED and wanted to attend San Antonio College, Detective Greiner was adamant he continue his education and that it might be some time before the District Attorney decided what action to take. Detective Greiner also assured Dominguez she would not break down his door with a warrant or show up at his place of work, but that she would call him and allow him to make arrangements to turn himself into authorities. In fact, several weeks passed before an arrest warrant was issued for Dominguez.

Dominguez also argues Detective Greiner's response to whether he needed a lawyer was inappropriate. *See Miranda v. Arizona*, 384 U.S. 436, 479 (1966). The video supports that Dominguez asked if he needed a lawyer and Detective Greiner did tell him he should wait. Prior to the exchange, however, Dominguez also told Detective Greiner that he was working for a lawyer. Detective Greiner suggested he ask his employer for help or suggestions and even advised him that he would probably qualify for an appointed lawyer if he wanted. Detective Greiner suggested Dominguez might wait to consult a lawyer until he knew the charges he was facing.

The video of the interview and Detective Greiner's testimony both support that Dominguez's statement was voluntary. *See id.* at 478. Shortly after Dominguez began talking to

Detective Greiner, he acknowledged that he was anticipating being questioned about the murder. He knew that people were starting to talk, and he was relatively confident his name had been used. Dominguez had plenty of time to determine whether he wanted to cooperate with the police department and Detective Greiner took every precaution to make sure he understood he was not under arrest and he did not have to speak to her. *See id*. at 478-79.

### CONCLUSION

Despite Dominguez's allegations, the record before us does not reflect any official action that could be characterized as intimidation, coercion, or deception. To the contrary, the record supports the trial court's finding that Dominguez made a free and deliberate choice to speak to Detective Greiner. We have reviewed the entire video recording of the interview, the testimony, and the arguments advanced by counsel at trial. Taking all of the evidence before the trial court into consideration, we hold the State proved by a preponderance of the evidence that Dominguez's statement did not violate *Miranda* or Article 38.22. Accordingly, we hold the trial court did not abuse its discretion in denying Dominguez's motion to suppress and we affirm the trial court's judgment.

Marialyn Barnard, Justice

DO NOT PUBLISH